**James E. OLSEN, Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellee.**

No. 82–1342.

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 1982.

Decided March 31, 1983.

Becker, Circuit Judge, dissented and filed opinion.

Michael J. Campbell, Delaware County Legal Assistance, Inc., Chester, Pa., for appellant.

David R. Culp, Acting Regional Atty., Gary S. Turetsky (argued), Region III, Office of the General Counsel, Dept. of Health and Human Services, Philadelphia, Pa., Peter F. Vaira, U.S. Atty., Serena H. Dobson, Asst. U.S. Atty., E.D. Pa., Philadelphia, Pa., for appellee.

Before GIBBONS, HIGGINBOTHAM and BECKER, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

In this case plaintiff appeals from a district court order reviewing a decision of the Secretary of Health and Human Services (Secretary) denying plaintiff disability benefits after October 16, 1980. The principal issue to be decided by this Court is whether substantial evidence supports the Secretary's decision. We believe that the Secretary's decision denying benefits after October 16, 1980 was supported by substantial evidence, and therefore will affirm the judgment of the district court.

### I. Statement of Case

Plaintiff filed an application for a period of disability insurance benefits with the Social Security Administration on April 14, 1980. Plaintiff claimed that a back injury prevented him from working after September 19, 1979. The Social Security Administration denied the application initially and again on rehearing. Pursuant to plaintiff's request, an Administrative Law Judge ("ALJ") conducted a *de novo* hearing at which plaintiff appeared with counsel. On February 19, 1981 the ALJ granted plaintiff's application for disability benefits but for the period September 19, 1979 through October 16, 1980. The ALJ concluded that plaintiff "[was] able to perform sedentary work activity" as of October 16, 1980. (Tr. 22). Therefore, the ALJ found plaintiff not disabled beyond that period. *Id.*

Plaintiff then sought review of the ALJ's decision in the United States District Court for the Eastern District of Pennsylvania. The parties filed cross-motions for summary judgment. After evaluating the record and findings of the ALJ, the magistrate recommended that the ALJ's decision be affirmed. The magistrate stated:

The claimant apparently does not argue that the ALJ's findings and evaluation of his residual functional capacity for sedentary work were fundamentally wrong, but that they were incomplete because the ALJ did not give due consideration to his mental retardation as an impairment which, added to this physical impairments, effectively precluded him from engaging in the "full range" of sedentary work.

(Appendix "App." B–13).

The magistrate further stated:

The findings of Dr. Spergel indicate that the limitations imposed by the claimant's mental retardation were not sufficiently restrictive to prevent him from engaging in several forms of sedentary work. (Tr. 189). Moreover, it appears that the ALJ gave due consideration to Dr. Spergel's report, in particular noting that Dr. Spergel did not believe that the claimant's limited mental ability would prevent him from engaging in a number of sedentary jobs. (Tr. 21–22).

(App. B–15).

The district court granted defendant's Motion for Summary Judgment and adopted the Magistrate's Report. (App. E–1).

## II. The Facts

At the time of the administrative hearing plaintiff was 34, had completed a sixth grade education, and was considered illiterate. His employment history included limited work as a trash collector, mover, dishwasher, janitor and grounds keeper. (Tr. 87). He worked as a grounds keeper at St. Agnes Hospital in Philadelphia until his accident, which occurred during the course of his employment. Plaintiff was injured when he slipped and fell down a number of wet steps on September 19, 1979. (Tr. 48).

Plaintiff underwent substantial medical evaluations and treatment. (Tr. 7–10, 105–207). He was eventually admitted to Riddle Memorial Hospital on February 18, 1980 for the surgical removal of an injured disc. He was readmitted on March 3, 1980 for phlebitis which was successfully treated. (Tr. 117–32).

The record contains a number of medical reports summarizing evaluations conducted by various physicians regarding plaintiff's medical condition. Dr. Erwin R. Schmidt, Jr., an orthopaedic specialist, concluded that plaintiff was disabled from performing his past maintenance work (Tr. 183), but found plaintiff capable of performing sedentary work. (Tr. 204). Similarly, Dr. Robert J. Doman concluded that plaintiff retained the functional capacity for sedentary work. (Tr. 192–95).

Dr. Philip Spergel, a psychologist and vocational expert, also interviewed the claimant. Dr. Spergel found that the claimant was not only illiterate, but that he possessed a "borderline range of intelligence." (Tr. 188). Dr. Spergel nevertheless found plaintiff capable of performing "all activities of daily living (dressing, bathing, etc.)." (Id. at 187). He also concluded that plaintiff had a good range of motion in his hands, and that plaintiff could sit comfortably for several hours so long as he shifts positions. (Id.). Finally, Dr. Spergel reported that plaintiff admitted that he could lift up to ten pounds. (Id.).

After evaluating plaintiff's mental and physical limitations, Dr. Spergel concluded that plaintiff was capable of work and identified specific sedentary jobs existing in the national economy within plaintiff's residual functional capacity. Dr. Spergel stated:

Despite Mr. Olson's physical limitations resulting from his lumbosacral discomfort and his educational deficits, he still retains transferable skills. His upper extremity psychomotor functions are intact and his gross manipulative skills aren't impaired. In addition, his visual organization is acceptable. He stated that he is

able to sit and stand for reasonable periods of time.

(*Id.* at 190).

### III. Discussion

The issue in this case is whether substantial evidence supports the Secretary's decision finding plaintiff *not* disabled after October 16, 1980. 42 U.S.C. § 405(g) promulgates that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Courts have defined "substantial evidence" as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also, Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981), *pet. for reh. den.,* 650 F.2d 481 (3d Cir.1981); *Lewis v. Califano,* 616 F.2d 73, 76 (3d Cir.1980); *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981). Substantial evidence has also been defined as "enough [evidence] to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury," *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939).

The process employed to determine whether plaintiff is entitled to benefits involves shifting burdens of proof. As this Court explained in *Rossi v. Califano,* 602 F.2d 55 (3d Cir.1979):

There is a two-pronged test for social security act disability: (1) determination of the extent of disability; and (2) determination whether that impairment results in inability to engage in substantial gainful activity. A claimant satisfies [his] initial burden of proof by showing that [he] is unable to return to [his] customary occupation. *E.g., Stark v. Weinberger,* 497 F.2d 1092 (7th Cir.1974); *Baker v. Gardner,* 362 F.2d 864 (3d Cir.1966). Once [he] has made such a demonstration, the burden of proof shifts to the Secretary to show that the claimant given [his] age, education and work experience, has the capacity to perform specific jobs that exist in the national economy. *E.g., Lew-*

*is v. Weinberger,* 541 F.2d 417 (4th Cir. 1976); *Hernandez v. Weinberger,* 493 F.2d 1120 (1st Cir.1976).

*Id.* at 57.

In the instant case it is undisputed that plaintiff satisfied his burden of establishing disability from September 19, 1979 to October 16, 1980 as defined by the Social Security Act, 42 U.S.C. § 423(d)(5). In short, it is agreed that, at the very least, the plaintiff is a "younger (age 18–44)," illiterate and unskilled individual who is unable to return to his past work.

Once plaintiff met the above threshold requirement, the burden fell upon the Secretary to show claimant, considering age, education, mental and physical limitations and work experience "has the capacity to perform specific jobs that exist in the national economy." *Rossi v. Califano,* 602 F.2d at 57.

In determining whether plaintiff possesses the residual functional capacity to engage in substantial gainful activity, the Secretary may be guided by the regulations at 20 C.F.R. § 404.1501, *et seq.* The Social Security Administration adopted these guidelines to ensure consistency in the Secretary's resolution of disability claims. These regulations provide for a five-step sequential evaluation giving consideration to (1) whether the claimant is currently working; (2) the severity of his impairment; (3) the nature of his impairment; (4) his ability to do relevant past work; and (5) his ability to do any work. Additionally, these regulations provide medical-vocational guidelines and tables in 20 C.F.R. Subpart P, Appendix 2, to be applied once the Secretary has established whether the claimant's maximum sustained work capability is limited to sedentary, light, medium or heavy work.

Appellant makes two arguments. First, he argues that in completing the fifth step of the evaluation process the ALJ applied an incorrect legal standard. Second, he insists that the ALJ's finding of no disability beyond October 16, 1980 was not supported by substantial evidence.

Appellant points specifically to Finding # 11 of the ALJ as evidence of the ALJ's alleged error. Finding # 11 states:

... 20 C.F.R. Section 404.1569 and Rule 201.23 Table No. 1 of Appendix 2, Subpart P, Regulations No. 4, *direct* that, as of October 16, 1980, the claimant, considering his maximum sustained work capability, age, education, and work experience, be found "not disabled" from that date ... (emphasis added).

(Tr. 23). Appellant suggests that the ALJ failed to make any finding with regard to plaintiff's non-exertional impairment [1] which would have precluded the use of grids found in Section 404.1569 and Rule 201.23, Table No. 1 of Appendix 2, Subpart P, Regulation No. 4.[2] The existence of plaintiff's non-exertional impairment, appellant suggests, would operate to place plaintiff in between the various grids, and therefore the ALJ's use of the word "directed" with regard to the effect of the regulations evidences a clear error.

We disagree with appellant's contention. The ALJ in the instant case considered "all of the testimony given at the hearing and the documents contained in the exhibit file" (Tr. 20) and made a decision supported by substantial evidence as required by law. (Tr. 20). Based upon a detailed and express evaluation of that evidence, the ALJ made twelve specific findings:

## FINDINGS

1. That the claimant met the specific earnings requirements for disability insured status under the Act on September 19, 1979;

2. That the medical evidence of record establishes that the claimant has been treated for orthopedic impairment of the low back with surgery on February 18, 1979, and a later bout of thrombophlebitis of the right leg;

3. That, based on credibility and evidence of record, I do not find that the claimant's subjective symptoms, including those of pain, would have prevented him from engaging in substantial gainful work activity from October 16, 1980;

4. That the claimant's impairments prevented him from engaging in substantial gainful work activity, however, commencing on September 19, 1979, and continued for a period of at least 12 months, until October 16, 1980, but not thereafter;

5. That the greater weight of the medical evidence establishes that these significant impairments lasted for a period of 12 months at a level of severity so as to cause the inability of the claimant to engage in substantial gainful activity;

6. That the claimant is unable to perform his past relevant jobs;

7. That, as of October 16, 1980, the claimant had the maximum sustained work capability for sedentary work, as defined in section 404.1567 of Subpart P, Regulations No. 4;

8. That the claimant was born on December 16, 1945, and is a younger individual;

---

[1] Appellant asserts that the non-exertional impairments which the ALJ failed to consider were enumerated in Dr. Spergel's report which states:

Mr. Olsen is presently functioning within the borderline range of intelligence (Full Scale I.Q. 75). There is a marked discrepancy between his verbal (I.Q. 82) and performance (I.Q. 69) scores suggestive of a moderate depressive reaction. Intersubtest scatter and pattern analysis reflect marked personal adjustment difficulties characterized by considerable anxiety. [Tr. 188].

*Quoted in,* Appellant's brief at 16.

[2] This would be the case primarily in either of two situations: an applicant falls between the various definitional categories established by the regulations (e.g., the individual can perform more than light but less than medium work), ... or an applicant has certain non-exertional impairments (*e.g.,* a psychotic headache; a sensory or skin disorder) in addition to exertional limitations.

*Santise v. Schweiker,* 676 F.2d 925, 928, n. 9 (3d Cir.1982).

9. That the claimant completed the sixth grade in school, but is illiterate;

10. That the claimant's past work activities did not impart skills that are transferable to work other than that previously performed;

11. That section 404.1569 and Rule 201.-23, Table No. 1 of Appendix 2, Subpart P, Regulations No. 4, direct that, as of October 16, 1980, the claimant, considering his maximum sustained work capability, age, education, and work experience, be found "not disabled" from that date, and through the date of this decision;

12. That the claimant was not under a "disability" as defined in the Social Security Act, as amended, after October 16, 1980, and through the date of this decision.

(Tr. 22–23).

These findings indicate that the ALJ considered competing medical evidence, (*see* Finding # 5) as well as other evidence and resolved any conflict in evidence in favor of finding a 12-month closed period of disability instead of a period in excess of 12 months. Moreover, the ALJ's Report indicates that several doctors found plaintiff capable of performing sedentary work, one of whom, Dr. Spergel, identified specific sedentary jobs, existing in the national economy, for which plaintiff retained the residual functional capacity to perform. (Tr. 190). In short, these Findings and other evidence in the record constitute substantial evidence.

As in many other social security cases which come before us, the instant claimant made a compelling argument about his disability; it could have persuaded some fact finders to rule in his favor. Where the record establishes beyond dispute that the claimant had a serious injury, has a "borderline range of intelligence" and is illiterate, and where an orthopedic specialist testified that claimant was incapable of performing his past maintenance work, certainly there is sufficient evidence to justify an award in his favor. But in view of the ALJ's specific findings and his detailed consideration of all of the evidence, including the combined effect of several impairments, we cannot say that as a matter of law the ALJ erred in resolving every major conflict in evidence against the claimant. Such is the nature of administrative adjudications and the constraints on our appellate review process. Thus, we will affirm the district court in upholding the ALJ's decision as supported by substantial evidence.

BECKER, Circuit Judge, dissenting.

This Court has defined substantial evidence as "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981). This oft-cited language is not, however, a self-executing formula for adjudication; our decisions make clear that determination of the existence *vel non* of substantial evidence is not a mere quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve a conflict created by, countervailing evidence. *Cf. id.* at 706 (ALJ must explain why certain evidence has been accepted and why other evidence has been rejected; there is a "particularly acute need" for explanation when record contains conflicting probative evidence). Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians), or if it is not really evidence but a mere conclusion. *See id.* (" 'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of Social Security disability cases ceases to be merely deferential and becomes instead a sham.

I cannot agree that the Secretary's decision in this case is based on substantial evidence. In my view, the Secretary has failed to acknowledge, much less come to grips with, serious inconsistencies in the

record. The Secretary has ignored critical evidence. He has misinterpreted both the medical and vocational evidence. He has even misapplied the governing provisions of his "grid" regulations. Under these circumstances, I believe that the majority has erred in affirming the district court's judgment in the Secretary's favor. *See Cotter v. Harris, supra,* 642 F.2d at 704–06. I therefore dissent.

It is undisputed that appellant, whose employment history is as a mover, gravedigger, groundskeeper, trash collector, and janitor, suffers from a severe and chronic lower-back syndrome and from anxiety; it is also undisputed not only that he can never return to heavy work, but also that he can never perform anything more strenuous than sedentary work. Moreover, it is agreed that appellant is a functional illiterate who reads at a second-grade level and who tests as retarded.

At the core of this case is the question whether substantial evidence supports the Secretary's conclusion that the appellant nevertheless retained a residual functional capacity to perform sedentary work—in particular, certain sedentary jobs existing in the national economy. The majority's affirmative conclusion depends primarily on the testimony of the Secretary's vocational expert, Philip Spergel, Ed.D., and two physicians, Robert J. Doman, M.D., a specialist in physical medicine and rehabilitation, and Erwin R. Schmidt, Jr., M.D., an orthopedic surgeon. This reliance, however, is misplaced. In upholding the Secretary's determination of non-disability under the grids, the majority relies upon Dr. Spergel's conclusion that the appellant "retains transferable skills." This conclusion, however,

which is necessary to put appellant's case within the grids, clashes with the finding of the Administrative Law Judge that "the claimant's past work activities *did not impart skills that are transferable* to work other than that previously performed." (Emphasis added.) Neither the majority nor the Secretary has explained this inconsistency; in fact, there does not appear to be any support in the record for Dr. Spergel's conclusion that appellant possesses transferable skills. Dr. Spergel's report therefore cannot constitute substantial evidence to support the ALJ's decision.[1]

The Secretary also focuses on Dr. Spergel's assertion that appellant retains a residual functional capacity to perform twelve specific sedentary jobs existing in the national economy. These jobs include base brander, ampoule examiner, coil winder, marker, solderer-assembler, thermostat assembler, and electrical-accessories assembler. But this conclusion is at odds with the medical report of Samuel P. Ivins, M.D., the Secretary's own neurologist and psychiatrist, who opined that appellant, because of his condition, should be totally restricted from activities that would bring him in contact with moving machinery. The above jobs appear to involve such activity. The Secretary has not addressed this apparent inconsistency in the evidence.[2]

Ability to perform sedentary work also depends on whether the employee is sufficiently free from physical pain to enable him to focus on his labors. There is evidence in the record that appellant suffers from constant and severe pain upon even the most modest exertion. That evidence, if credited, obviously would reflect upon appellant's ability to perform the kinds of

1. The Secretary contends that Dr. Spergel's finding of "transferable skills" does not conflict with the ALJ's finding because a "fair reading" of Dr. Spergel's report demonstrates that he is using the phrase "transferable skills" to refer to skills retained despite appellant's impairments rather than to skills acquired and retained from past work activities. I find this attempted distinction unconvincing.

2. Nor has the Secretary addressed the conflict in Dr. Spergel's assertions (1) that "SEPTA

[public transportation] is available and is approximately 15 minutes from [appellant's] home," and (2) (on the very next page of the report) that "Mr. Olson [sic] is able to walk for two city blocks and then notes a burning sensation in his right leg. When this occurs, he must stop to rest." This conflict relates directly to the question whether appellant could maintain employment at any of the twelve jobs listed by Dr. Spergel.

jobs listed by Dr. Spergel. The ALJ's treatment of this contention is confined to one conclusory statement in his opinion:

The evidence of record does not show that the claimant's impairments and symptoms, including those of pain, continued at a level of severity so as to preclude him from performing work activity beyond October 16, 1980.

This off-hand dismissal of subjective pain does not pass muster under the decisions of this Court. *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981) (failure seriously to consider subjective evidence of pain can itself constitute grounds for reversal); *see Cotter v. Harris, supra,* 642 F.2d at 704 ("administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests"). Relevant, too, is our admonition in *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979), that "[t]estimony of subjective pain and inability to perform even light work is entitled to great weight, particularly when ... it is supported by competent medical evidence." It is so supported here, and there is no medical evidence advanced by the Secretary to the contrary.

The Secretary relies heavily on the reports of Dr. Doman and Dr. Schmidt. Dr. Schmidt, a member of the Department of Orthopedic Surgery at the Hospital of the University of Pennsylvania, is appellant's treating physician. Dr. Doman's report, dated December 10, 1980, concludes that appellant can perform sedentary (though not light) work.[3] Although neither Dr. Schmidt's report of October 16, 1980, nor his "functional assessment" of January 21, 1981, is inconsistent with Dr. Doman's conclusion, these reports must be considered in light of Dr. Schmidt's subsequent report dated March 18, 1981, less than two months later. That report, which was submitted to the Appeals Council, states that "Mr. James Olsen is continuing under medical care [and] is *totally disabled for any* work, even sedentary. He is being admitted to a rehabilitation center in the very near future for further care." (Emphasis added.) The Appeals Council totally disregarded this last report, stating only that Dr. Schmidt's assessment was "not supported by clinical findings." This pronouncement, however, completely ignores the fact (of record) that Dr. Schmidt was appellant's treating physician and that he had examined appellant a number of times. It also ignores the precept that a treating physician's opinion is entitled to substantial weight. *Cotter v. Harris, supra,* 642 F.2d at 704; *cf. Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978) (expert opinions of treating physician as to existence of disability are binding on factfinder unless contradicted by substantial evidence to the contrary). The Secretary, therefore, without any basis in fact, has utterly disregarded critical evidence relating to appellant's inability to work on account of his back condition.[4]

Finally, there are serious problems with the Secretary's application of the grids. In *Santise v. Schweiker,* 676 F.2d 925, 934 (3d Cir.1982) (emphasis added), this Court wrote:

[I]t must be kept in mind that the grids do not govern—and indeed were not intended to govern—*all* disability cases. For example, the regulations specifically dictate that "a conclusion of disabled or not disabled *is not directed*" if an individual's vocational profile is not precisely contained in Appendix 2. 20 C.F.R. § 404.1569 & Appendix 2, § 200.00(d); *see Thomas v. Schweiker,* 666 F.2d 999, 1004 (5th Cir.1982) ("use of the Guidelines is inappropriate where their evidentiary underpinnings do not coincide *exactly*

---

**3.** "Sedentary" and "light" work are terms of art, defined in 20 C.F.R. § 404.1567. "Sedentary work" involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* § 404.1567(a). "Light work," by contrast, "involves lifting no more than 20 pounds at a time with frequent lifting or carry-

ing of objects weighing up to 10 pounds." *Id.* § 404.1567(b).

**4.** Nor has the Secretary even begun to evaluate the impact upon employability of the condition known as arachnoiditis (inflammation of the spinal cord), from which appellant concededly suffers.

with the evidence of disability appearing on the record" (emphasis added)).

The *Santise* Court explained further that, "[i]f a claimant's characteristics do not fit neatly into one of the many categories defined by the tables, the ALJ *is permitted* to arrive at a conclusion as to disability *independent of,* but consonant with, the regulations." *Id.* at 928 (footnotes omitted) (emphasis added).

In the present case, appellant's non-exertional impairment is undisputed. Even Dr. Spergel reported:

Mr. Olson [*sic*] is presently functioning within the borderline range of intelligence (Full Scale I.Q. 75). There is a marked discrepancy between his verbal (I.Q. 82) and performance (I.Q. 69) scores suggestive of a moderate depressive reaction. Intersubtest scatter and pattern analysis [*sic*] reflect marked personal adjustment difficulties characterized by considerable anxiety.

Nevertheless, the ALJ ignored appellant's non-exertional impairment and concluded instead that he was "directed" by the regulations to find appellant not disabled. As we explicitly recognized in *Santise,* however, "the rules 'may not be fully applicable' where a claimant suffers from non-exertional, instead of or in addition to exertional, impairments." 676 F.2d at 934–35 (quoting 20 C.F.R., part 404, Appendix 2, § 200.00(e)). Thus, the regulations only "direct" a finding of disabled or not disabled in those cases in which the claimant's impairment is strictly exertional and his/her individual profile coincides exactly with the guidelines. This is not such a case. Because Mr. Olsen's mental retardation represents a critical non-exertional impairment, the ALJ's failure to reach a conclusion independent of the grid regulations constitutes an application of an incorrect legal standard.[5]

The ALJ's error is even more obvious in light of our holding in *Burnam v. Schweik-*er, 682 F.2d 456 (3d Cir.1982). Building upon *Santise, Burnam* declared:

Having determined on the basis of the grid that Burnam was not disabled based on his exertional impairments, the administrative law judge failed to follow the regulatory directive that he then consider "how much [Burnam's] work capability [was] further diminished in terms of any types of jobs that would be contraindicated by [his] nonexertional limitations." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.-00(e)(2) (1981).

. . . .

The administrative law judge thus erred in treating Burnam's exertional and nonexertional impairments separately and in then determining on the basis of the medical-vocational grid that substantial gainful work existed in the national economy that Burnam could perform. The administrative law judge instead should have considered whether work existed for a person with the *combination* of impairments Burnam possessed. *See Gagnon v. Secretary of Health & Human Servs.,* 666 F.2d 662 (1st Cir.1981). Because the administrative law judge failed to consider Burnam's physical and mental condition as a whole, the Secretary's decision is not supported by substantial evidence.

*Id.* at 457–58. The ALJ here did not follow the teachings of *Burnam.* The closest that he came was in observing that Dr. Spergel had considered the combined effect of appellant's physical and mental impairments and in ultimately concluding that appellant could perform sedentary work. But even these statements are in derogation of *Burnam's* requirement that the *ALJ* (rather than the Secretary's witness) consider the claimant's physical and mental condition as a whole.

Moreover, I note that appellant's profile fits almost four-square into a grid guideline that would *mandate* a finding of disability.

---

5. The majority suggests that, because the ALJ stated that he had considered "all the testimony given at the hearing and documents contained in the exhibit file," he was not "direct-ed" with regard to the effect of the regulations. With all respect, I believe that the ALJ's language speaks for itself.

Like the person in the example set forth in the margin,[6] appellant (who was 34 years old at the time of the 1980 administrative hearing) cannot perform a full range of sedentary work.

The majority affirms the Secretary by the exercise of extreme deference, in apparent reliance upon what can be described only as colorable compliance with the obligations that this Court has imposed upon administrative law judges in Social Security disability cases. As I read the record, including the opinions of the ALJ and the Appeals Council, this colorable compliance masks an infidelity on the part of the ALJ and the Appeals Council to the demands of their respective roles at the *de novo* hearing and on review—the demand that they give meaningful and critical consideration to evidence, resolve serious conflicts in the evidence, and correctly apply the law. I do not go so far as to suggest that summary judgment should have been granted for appellant. In view of the considerations set forth above, however, I would vacate the judgment and remand the matter to the Secretary for resolution of the glaring inconsistencies in the record, for proper application of the grids, and for consideration of evidence improperly ignored, including Dr. Schmidt's latest report.

6. Section 201.00 (in 20 C.F.R.), which introduces Table No. 1 (containing criteria for determining disability), provides, in subsection (h), examples of individuals whose particular characteristics do not specifically meet any of the rules in Appendix 2 and for whom Table No. 1 is therefore not conclusive on the question of disability. Example 2 describes:

> An illiterate 41 year old individual with mild mental retardation (IQ of 78) is restricted to unskilled sedentary work and cannot perform vocationally relevant past work, which had consisted of unskilled agricultural field work; his or her particular characteristics do not specifically meet any of the rules in Appendix 2, because this individual cannot perform the full range of work defined as sedentary. In light of the adverse factors which further narrow the range of sedentary work for which this individual is qualified, a finding of disabled is appropriate.