**Rosalie R. STEWART, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. No. 84–276 LON.**

United States District Court, D. Delaware.

March 26, 1986.

recoverable under the ADEA. This assertion is incorrect. *See Fiedler v. Indianhead Truck Lines,* 670 F.2d 806 (8th Cir.1982).

the reasons stated herein, the Court finds that the Secretary's decision is not supported by substantial evidence and the case is remanded for proceedings in accordance with this opinion.

## I.

Stewart was born March 14, 1927. Her recent employment history includes work as a full-time supermarket cashier from 1964 to 1974 and as a part-time[1] janitress from 1974 to April, 1979.[2] Stewart has not worked since her hospitalization for chest pains in May, 1979. At that time, Dr. Richard A. Kahlbaugh linked Stewart's discomfort to multiple pulmonary emboli, inferior wall subendocardial infarction and arteriosclerotic cardiovascular disease (Transcript "T." 122–24). However, Dr. Kahlbaugh later questioned whether Stewart had suffered inferior wall subendocardial infarction or merely EKG changes in response to her pulmonary infarction (T. 139).

Stewart applied for benefits on April 20, 1981, claiming that heart damage, thyroid problems and high blood pressure precluded her employment. The latter two conditions arose after Stewart's 1979 hospitalization (T. 128–38).[3] The Secretary denied Stewart's claim both initially (August 26, 1981) and on reconsideration (May 13, 1982). Stewart then received a hearing before an Administrative Law Judge ("ALJ") who found Stewart capable of performing sedentary jobs such as movie or restaurant cashier.[4] The Appeals Council affirmed the ALJ on March 23, 1984, making his recommendation the Secretary's final decision. The Magistrate concurred with the Secretary in an August 6, 1985 opinion.

The reviewing authorities below apparently discounted Stewart's testimony be-

John F. Lawless, E.I. du Pont de Nemours & Co., Inc., Wilmington, Del., for plaintiff.

Sue L. Robinson, U.S. Atty's. Office, Wilmington, Del. (Beverly Dennis, III, Paul S. Ceja, Dept. of Health and Human Services, Philadelphia, Pa., of counsel), for defendant.

## OPINION

LONGOBARDI, District Judge.

Plaintiff Rosalie Stewart ("Stewart") challenges the final decision of the Secretary of Health and Human Services denying her application for Social Security disability benefits. Each party has filed a motion for summary judgment. Jurisdiction is based on 42 U.S.C. § 405(g). For

1. Stewart worked part time because she could not find a full time position. She alleges no physical impairments from 1974–1979.

2. In determining a claimant's ability to work, the Secretary classifies tasks according to the skill and physical strain involved. See n. 8 *infra.* The vocational expert who testified at Stewart's hearing classified her cashier job as semi-skilled medium work and her janitress position as unskilled light work. (T. 66).

3. Stewart also suffered from colon ailments in 1981. (T. 153–54).

4. The ALJ held this hearing on October 28, 1983. He issued his opinion on January 31, 1984.

fore the ALJ that she suffers from severe pain caused by her cardiac ailment. Stewart described a pain that originates on the left side of her neck and extends through her left shoulder and arm, occasionally reaching her fingertips. (T. 38–39). Stewart also testified that severe pain and cramping in her left leg limit her walking to two blocks even on "a good day." (T. 60). This leg pain has occurred even while she is sedentary. (T. 43). Moreover, Stewart continues to suffer from chest pains which are relieved with Inderol three times a day and nitroglycerine twice a week. (T. 40–41).

Stewart testified that her pain restricts her activities to a few household chores. She can bathe, dress, read a newspaper, watch television, wash dishes and make her bed on most days. (T. 52). However, Stewart cannot perform other tasks such as cooking, vacuuming, sweeping, marketing, yard work or laundry. (T. 52–54). She becomes dizzy if she bends too long (T. 59–60) and ceased driving after a blackout at the wheel in July, 1981. (T. 50).

After hearing Stewart's litany of pain, the ALJ consulted Dr. Ephrain Y. Royfe, a vocational expert:

> Q. ... Alright, I want you to *assume* that the claimant's testimony for purposes of this hypothetical is *credible* here today, she has symptoms involving the chest, the upper left shoulder area, down the arm and symptoms involving the left leg, shortness of breath, and according to her testimony she has been restricted and limited in her ability to function. At home, she doesn't do ... can't vacuum, can't handle a broom, sits most of the day, watches TV, gave up driving a car because of fear of ... fainting, when she bends down too long she's dizzy, afraid of dizziness ... takes medication for the pain, the sharp chest pains which help to ease it, these ... all help to ease the heart problem, never the less [sic], she continually has these symptoms, off and on which restrict her and limit her in the

manner in which she testified. Under that hypothetical, could she function in any of her old jobs?

> A. No she could not your Honor.

> \* \* \* \* \* \*

> Q. Could she be employed at any kind of work under that hypothetical?

> A. Under that hypothetical I don't feel she could work at *any job.*

(T. 66–67, emphasis added.) Thus, Dr. Royfe's testimony essentially reduced the issues to the single question of Stewart's credibility because, if Stewart did not exaggerate or fabricate her pain, the vocational evidence before the ALJ required a finding of disability.

To assess the veracity of Stewart's complaints, the ALJ consulted medical reports which included the opinions of Dr. Roger B. Rodrigue, Stewart's treating physician, and Dr. Daniel Lewis, the reviewing physician retained by the Secretary. Their polar views, based in part on the results of two treadmill exercise tests, framed the options for the ALJ's disposition of this case.

Dr. Rodrigue issued two nearly identical reports[5] which characterized Stewart as disabled. Dr. Rodrigue classified Stewart as under treatment for (1) hypertension; (2) ischemic heart disease with angina; (3) peripheral vascular disease; and (4) hypothyroidism. Dr. Rodrigue reported an increase in Stewart's activities in response to blood pressure medication. He made no mention of problems resulting from her hypothyroidism but he did describe Stewart as "disabled because of angina" (T. 179–80). He also described her as a victim of "coronary artery disease which disables and limits her." [6] (Tr. 180).

Dr. Rodrigue appended the results of an October 18, 1982 treadmill exercise test ("second treadmill test") to his second opinion. He apparently did not know of an earlier test conducted on September 10, 1981 ("first treadmill test"). The physician who supervised the second test, Dr. Mi-

---

5. The reports are dated December 7, 1982 and September 12, 1983. (T. 179–80).

6. Dr. Rodrigue also suspects that Stewart has atheromatosis vascular disease. (T. 180).

chael Stillabower, terminated Stewart's exercise after only three minutes and ten seconds because she experienced mild chest discomfort and severe left leg cramps. Stewart's failure to reach an adequate exercise level precluded conclusive findings. Dr. Stillabower, however, noted "symptoms suggestive of myocardial ischemia with low levels of exertion. The ST–T wave changes are not highly diagnostic due to the mild resting changes but they are certainly suggestive." (T. 181). The separate Stress Thallium Study also reached qualifiedly negative results because of Stewart's failure to reach an adequate exercise level. Although Dr. Rodrigue's report did not expand upon the relationship between these test results and his conclusion of disability, the very fact that he enclosed the two in a single exhibit suggests that he viewed the test results as supportive of his medical opinion.[7]

Dr. Lewis' report of October 4, 1983, reached the entirely contrary conclusion that Stewart is not impaired to any degree. Dr. Lewis never examined Stewart. He based his conclusion solely on medical files supplied by the Secretary that did not include the results of the second treadmill test. Dr. Lewis determined, as had Dr. Rodrigue, that Stewart's thyroid disorder and hypertension were not disabling. However, Dr. Lewis found the conclusion of angina unsubstantiated based upon the results of the first treadmill test. This test had been terminated after only thirty seconds because Stewart complained of chest pain and fatigue. The attending physician, Dr. Michael F. Gordon, reported that because "[t]he test was prematurely terminated ... *myocardial ischemia cannot definitely be excluded....* In talking to the patient, the nature of the chest discomfort did not appear to be cardiac." (T. 142) (emphasis added). Dr. Lewis did not discuss Stewart's alleged cardiovascular problems.

Dr. Lewis' answers to a questionnaire entitled "Medical Assessment of Ability to Do Work-Related Activities" illustrate his glowing appraisal of Stewart's health. Dr. Lewis found *no limitations* on Stewart's ability to stand, walk or bend and no limitations other than those imposed by her sex and age on Stewart's ability to lift, carry, push and pull. (T. 171–72).

The ALJ agreed with Dr. Lewis' ultimate conclusion that Stewart is not disabled despite ignoring, to varying degrees, Lewis' specific findings on Stewart's ability to perform work-related activities. The ALJ found that while Stewart can perform some sedentary jobs, she cannot engage in "prolonged standing or walking, climbing, squatting, kneeling, heavy lifting/pushing/pulling or operating of foot controls with her left leg." (T. 14). He also found that Stewart must "avoid driving [and] working at heights or around hazardous machinery." (T. 15). In addition, the ALJ found Stewart "unable to perform her past relevant work as janitor or supermarket cashier" (T. 15) despite Dr. Lewis' finding that the physical demands of these jobs would be within Stewart's abilities.

## II.

This Court's review of the Secretary's decision is limited by statute to discerning whether substantial evidence supports the result. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Olsen v. Schweiker*, 703 F.2d 751, 753 (3d Cir.1983). "The substantial evidence standard does not allow a reviewing court to give automatic deference to the ALJ's determination." *Makovics v. Schweiker*, 577 F.Supp. 1287 (D.Del.1983).

---

7. Dr. Rodrigue has made this link explicit in an affidavit dated March 21, 1985. Dr. Rodrigue's affidavit also states that the results of the first treadmill test support his conclusion of disabili-

ty. Stewart concedes, however, that this affidavit cannot be considered by this Court because it was not before the Secretary.

Rather, "leniency [must] be shown in establishing the claimant's disability ... [while] the Secretary's responsibility to rebut it [must] be strictly construed." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir.1979).

The determination of entitlement "to benefits involves shifting burdens of proof." *Olsen v. Schweiker*, 703 F.2d at 753. The Third Circuit has developed "a two-pronged test for social security act disability: (1) determination of the extent of disability; and (2) determination whether that impairment results in inability to engage in substantial gainful activity. A claimant satisfies her initial burden of proof by showing that she is unable to return to her customary occupation." *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979). Stewart's satisfaction of this burden is undisputed. The burden therefore fell "upon the Secretary to show [that] claimant, considering [her] age, education, mental and physical limitations and work experience 'has the capacity to perform specific jobs that exist in the national economy.'" *Olsen v. Schweiker*, 703 F.2d at 753, quoting *Rossi v. Califano*, 602 F.2d at 57.

In attempting to carry this burden, "the Secretary may be guided by the regulations at 20 C.F.R. § 404.1501 et seq.," which seek "to ensure consistency in the Secretary's resolution of disability claims ... by provid[ing] for a five step sequential evaluation" that considers the nature and severity of the claimant's impairment and her ability to perform any work. *Olsen v. Schweiker*, 703 F.2d at 753. These regulations also provide medical-vocational tables, known as "the grids", in 20 C.F.R. Subpart P, Appendix 2, which can be applied once the Secretary establishes a claimant's maximum work capability.[8] *Id.; See Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (upholding the validity of the medical-vocational guidelines except as applied to individuals whose capabilities are not accurately described). In the instant

case, the ALJ followed the guidance of step five in the sequential evaluation process which determines disability based on factors including age, education, past work experience and residual functional capacity, (T. 8), (applying 20 C.F.R. § 404.1520(f), § 416.920(f)), and found that Stewart could perform sedentary work. (T. 14–15). The ALJ then used this finding to justify reference to grid Rule 201.07, Table No. 1, Appendix 2, Subpart P, which directed a conclusion that Stewart is not disabled.

This Court holds that the ALJ's finding of Stewart's capacity to perform sedentary work lacks the substantial supporting evidence required by 42 U.S.C. § 405(g).

The ALJ's error emanates from his treatment of Stewart's complaints of pain. Both Congress and the Secretary have recognized that pain can be disabling. *Green v. Schweiker*, 749 F.2d 1066, 1070 (3d Cir. 1984); 42 U.S.C.A. § 423(d)(5)(A) (Supp. 1985); 45 Fed.Reg. 55566, 55576–77 (Aug. 20, 1980). For a time, the Third Circuit and the Secretary disagreed about the standards for assessing complaints of pain. *Green v. Schweiker*, 749 F.2d at 1069. Congress temporarily resolved the dispute in favor of the Secretary with section 3(a)(1) of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794 (1984) (codified at 42 U.S.C. § 423(d)(5)). This provision provides that:

Section 223(d)(5) of the Social Security Act is amended by inserting after the first sentence the following new sentences: "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; *there must be medical signs and findings*, established by medically acceptable clinical or laboratory diagnostic techniques, *which show the existence of a medical impairment* that results from anatomical, physiological, or psychological abnormalities *which could reasonably be expected to produce the pain* or other symptoms alleged

---

**8.** These tables divide work capabilities into four categories—heavy, medium, light and sedentary, and work skills into three categories—skilled, semi-skilled and unskilled.

and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether an individual is under a disability."

*Id.* at § 3(a)(1), 98 Stat. at 1799 (to be codified at 42 U.S.C. § 423(d)(5)) (emphasis added).[9]

The Third Circuit has read its "prior decisions on evaluating subjective pain" to conform with this standard. *Green v. Schweiker,* 749 F.2d at 1069. Currently, the Secretary must comply with Third Circuit decisions requiring:

(1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence, *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981); *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir.1971); (2) that subjective pain "may support a claim for disability benefits," *Bittel,* 441 F.2d at 1195, and "may be disabling," *Smith,* 637 F.2d at 972; (3) that when such complaints are supported by medical evidence, they should be given great weight, *Taybron v. Harris,* 667 F.2d 412, 415 n. 6 (3d Cir.1981); and finally (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence. *Green v. Schweiker,* 749 F.2d 1066, 1070 (3d Cir.1984); *Smith,* 637 F.2d at 972.

*Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985).

Stewart testified to several forms of debilitating pain. The vocational expert stated unequivocally that if Stewart's claims were credible, she could not work at *any* job. The Third Circuit requires that Stewart's testimony be credited if there is medical evidence of ailments "which could reasonably be expected to produce the pain ... alleged," unless contrary medical evidence exists. *Green v. Schweiker,* 749 F.2d at 1069. Thus, the propriety of the ALJ's decision turns on the content and weight of the medical evidence.

■ In assessing medical evidence, the opinion of the treating physician is entitled to substantial weight, *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981), unless "unsupported by any recitation of medical findings or other relevant factors." *Warncke v. Harris,* 619 F.2d 412, 417 (5th Cir.1980). Dr. Rodrigue's reports state unequivocally that Stewart is disabled. (T. 179–80). He lists the four conditions for which Stewart is under his treatment, *see supra* at 378, and then briefly describes the status of each ailment. He agrees with Dr. Lewis that Stewart's hypertension and hypothyroidism are well controlled but concludes that Stewart's other conditions render her disabled. Dr. Rodrigue's failure to attach extensive records detailing Stewart's ailments cannot be faulted since a fair reading of Third Circuit precedents in 1983 would not have alerted him to this requirement. *See Green v. Schweiker,* 749 F.2d at 1071 (claimant who may have failed to provide sufficient objective medical evidence based "upon an understandable interpretation of prior Third Circuit case law" is given the chance to submit documentation). Dr. Rodrigue did, however, attach the results of the second treadmill test to his most recent report. Although this test was not conclusive of ischemia, the ST–T wave changes were suggestive of the condition to both Dr. Stillabower and Dr. Rodrigue.

**9.** Although this law was not in effect when the ALJ issued his decision, it reflects the prior HHS policy which the ALJ was to have applied.

Their interpretation was not contradicted by Dr. Lewis, who apparently never received a copy of the results from the ALJ. *See* Defendant's Response to Plaintiff's Interrogatory 1, Docket Item ("D.I.") 24. The ALJ's dismissal of the Rodrigue/Stillabower interpretation thus constitutes either an impermissible substitution of his own medical judgment for that of a physician, *Ferguson v. Schweiker*, 765 F.2d at 37, or a misunderstanding of the standard for weighing pain. If the former, Dr. Rodrigue's opinion must be credited. If the latter, the ALJ must realize that "the new statute does not require objective medical proof of each and every element of pain." *Green v. Schweiker*, 749 F.2d at 1070. It only requires *"medical signs* and findings ... of a medical impairment ... which could *reasonably be expected* to produce the pain or other symptoms alleged." Pub.L. 98–460, § 3(a)(1) (emphasis added); *see Green v. Schweiker*, 749 F.2d at 1071. The uncontradicted suggestion of ischemia derived from the second treadmill test, together with Stewart's *undisputed* cardiovascular, thyroid and hypertension conditions may satisfy this requirement. In either case, the ALJ failed to give sufficient weight to Dr. Rodrigue's opinion.[10]

■ Dr. Lewis contradicted Dr. Rodrigue's finding of cardiac impairment because he found both the 1979 diagnosis of nontransmural subendocardial inferior wall infarction not well substantiated and the diagnosis of angina uncorroborated by the inconclusive first treadmill test. (T. 169). Although the ALJ may choose between conflicting lines of medical evidence, *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978), less credence is owed to the reports of a reviewing physician who has not personally examined the patient. *Spencer v. Heckler*, 765 F.2d 1090 (11th Cir.1985). This diminished credence seems especially warranted where the reviewing physician has based his conclusions on incomplete medical information and made an assessment of an applicant's physical ability to do work related activity that is completely incongruous with the other evidence in the case. *See supra* at 379; *see also Gilliland v. Heckler*, 786 F.2d 178, 183–84 (3d Cir. 1986); *Green v. Schweiker*, 749 F.2d at 1071 n. 3 ("[s]tanding alone ... a physical capacities evaluation form is not substantial evidence.")

■ The ALJ also erred in failing to discuss why he agreed with Dr. Lewis' ultimate conclusion that Stewart is not disabled despite finding so much fault with his specific assessments of her abilities. To properly review the Secretary's decision, the Court requires specific reasons about why certain evidence has been accepted or rejected. *Cotter v. Harris*, 642 F.2d 700. This need is greatest where the ALJ's choice is case dispositive. The Court, therefore, finds that the ALJ erred both in giving too much weight to Dr. Lewis' opinion and in failing to enumerate reasons for accepting Lewis' conclusion despite rejecting his specific findings.

■ In summary, the Court remands this case to the ALJ for three reasons. First, the ALJ and the Appeals Council failed to give appropriate weight to the opinion of the treating physician, Dr. Rodrigue. Second, too much weight was given to the opinion of Dr. Lewis who never examined Stewart, whose specific findings of her work related abilities were largely ignored and whose ultimate conclusion of Stewart's ableness was based on incomplete medical information. Third, Stewart should be allowed to introduce further objective medical evidence of her condition because "she may have failed to do so [originally] in reliance upon an understandable interpretation of prior Third Circuit case law." *Green v. Schweiker*, 749 F.2d at 1071.

10. Dr. Rodrigue's report cannot fairly be equated with that of the treating physician in *Warncke v. Harris*, whose letter read in full: "TO WHOM IT MAY CONCERN: This is to certify that Herbert Warncke is under my medical care and is unable to work indefinitely due to arthritic condition in his shoulders." 619 F.2d at 415. The Magistrate's reliance on that case as authority for the ALJ's dismissal of Dr. Rodrigue's report is therefore misplaced.