Herbert H. WARNCKE,
Plaintiff-Appellant,
v.
Patricia Roberts HARRIS, Secretary,
Department of Health and Human
Services, Defendant-Appellee.

No. 78–2529.

United States Court of Appeals,
Fifth Circuit.

June 18, 1980.

Rehearing and Rehearing En Banc
Denied Aug. 4, 1980.

Janis Estrada, Houston, Tex., Linda B. Watkins, Baton Rouge, La., for plaintiff-appellant.

Arthur R. Amdur, Asst. U. S. Atty., Houston, Tex., for defendant-appellee.

Before THORNBERRY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.

THORNBERRY, Circuit Judge:

In this case we must review a district court order affirming the Secretary's decision to deny social security disability benefits to the appellant under 42 U.S.C. § 423 (1976). Because the Secretary's decision is supported by substantial evidence and consistent with new regulations, we affirm the order in the court below.

## I. Facts and Proceedings.

Appellant Warncke is fifty-nine years old and has an eighth grade education. He has worked primarily as a self-employed trucker hauling grain, cotton, fertilizer, and other cargo. He has also worked as an oilfield roughneck.

Warncke first received social security disability benefits in 1967 when he began suffering back ailments from a spinal fusion operation. In 1967–69 he received lumbar and cervical laminectomies to relieve his back and neck pain. In July 1970 Warncke's treating physician, Dr. Gol, noted that Warncke had probably achieved maximum improvement in his back. Although Warncke still suffered muscle spasms and pain, Dr. Gol concluded that he could do nonmanual work as long as he received medication to ease the pain. Record, Vol. II, at 155. In May 1973 Dr. Gol noted that Warncke used medication and a brace to ease his back pain and "could possibly be employed in light messenger work or light sedentary work." *Id.* at 156.

Warncke continued to receive disability benefits until July 1973, when the Secretary learned that Warncke had been operating a small trucking company since January 1972. Warncke had hired employees to drive two of his trucks, and lined up trucking assignments for the employees. In 1972 Warncke had reported gross income in excess of $23,-800. Warncke initially contested the termination of his benefits, but he did not appeal the Secretary's decision. This decision to terminate benefits is not presented on this appeal.

In February 1975 Warncke discontinued his trucking operation because one truck was destroyed in an accident for which Warncke had no insurance, and because Warncke's drivers had cheated him so much that he was losing money in the operation. *Id.* at 36, 53–54. In the same month Warncke entered the hospital for treatment of shoulder pain caused by arthritis. After his condition showed improvement from physical therapy and steriod injections, Warncke was discharged to treat himself at home with medication. *Id.* at 159. In September 1975 Warncke applied for disability benefits because he alleged that his arthritis and back problems had prevented him from working since the end of January 1975. An examiner denied Warncke's claim on October 29, 1975.

On November 12, 1975, Dr. Gol examined Warncke again. Gol reported the results of the examination in a memorandum dated December 4, 1975. *Id.* at 162. Gol observed that Warncke had a bilateral ulnar neuropathy, presumably caused by excessive leaning on his elbows. Gol concluded that Warncke's ulnar function was still satisfactory, and that no new neurological deficits had developed. Gol also observed that Warncke had a good deal of pain in his right shoulder and neck, and recommended that Warncke keep them as warm as possible. In conclusion, Gol stated that "[a]t the present time his condition remains exactly as when last seen, as far as function and activity is concerned." *Id.* This memorandum and Warncke's medical file were considered by a reviewing physician and second examiner, who affirmed the previous conclusion that Warncke was not sufficiently disabled to receive disability benefits. Warncke filed for a hearing *de novo* before an administrative law judge.

In January 1976 Warncke again entered the hospital, primarily for treatment of his back pain. While in the hospital, Warncke received an operation that corrected his left ulnar neuropathy and almost immediately restored sensation to the ulnar two fingers of his left hand. *Id.* at 184. Warncke also had numerous basal cell epitheliomas fulgurated and curetted, and a large lesion in his right nasolabial fold excised by a plastic surgeon. *Id.* at 188–91. For treatment of his back and shoulder pain, Warncke was fitted with a percutaneous stimulator. This device is worn as a back brace, and provides electric currents to counteract pain from arthritis. Warncke was discharged in March 1976 with the stimulator and various medication to provide relief from the pain.

In June 1976 Warncke received his hearing *de novo*. He elected not to retain counsel for the hearing. *Id.* at 25, 27. Warncke

testified about his prior trucking business and about his medical condition. He said that he had no trouble walking and that his weight had been steady for the past seven or eight years. Warncke testified that the stimulator eased his back and shoulder pain whenever he wore it, but that he could not wear the stimulator to sleep at night because the electric charges kept him awake and tired him out. As a result, he said that his back and shoulder pain prevented him from sleeping at night, and thus made him too drowsy to work during the day. *Id.* at 39–40. Warncke described various medication that he took to relieve his pain and arthritis. He said that he would soon undergo surgery to relieve his neck pain caused by scar tissue from the cervical laminectomy.

The ALJ also heard testimony from a medical advisor, Dr. Lewis Leavitt, chairman of the Department of Physical Medicine at Baylor Medical School in Houston. Dr. Leavitt had not examined Warncke personally, although he had reviewed Warncke's medical records through December 1975. Leavitt discussed Warncke's medical history, and described the percutaneous stimulator which Warncke wore. Leavitt said that such stimulators have been used quite effectively to manage pain, and are routinely dispensed by physicians. Leavitt concluded that Warncke's medical condition would be expected to cause him moderate pain, and that the ability to perform sedentary or management work was not contraindicated by Warncke's medical history. *Id.* at 48. Warncke asked Leavitt a few questions on cross-examination.

The final witness, Patricia Wells, was a vocational consultant who helped handicapped people find employment. Wells had also read Warncke's medical file. Under the assumption that Warncke suffered moderate pain and had no ability to function with his shoulders and elbows, Wells testified that he could obtain numerous sedentary jobs both in his rural hometown area and in Houston, fifty miles away. In particular, Wells said that Warncke could obtain employment as a cashier, truck or cab dispatcher, telephone salesman, security guard, or light factory assembler. Warncke also asked Wells a few questions on cross-examination.

Later in June 1976 the ALJ sent Leavitt Warncke's updated medical records from his hospitalization in January—March, 1976. Leavitt reviewed these records, and observed that the operation to correct the ulnar neuropathy had been successful, and that the "stimulator has given him some relief in the management of his pain syndrome." *Id.* at 193. Leavitt said, "it would be my final impression that this patient can perform light or sedentary-type work." *Id.*

On August 6, 1976, Warncke telephoned the ALJ to tell him that Dr. Gol wanted to rehospitalize Warncke for his arthritis. On August 10, 1976, Warncke sent the ALJ a one-page letter dated November 12, 1975, and signed by Dr. Gol. The letter read in full as follows:

TO WHOM IT MAY CONCERN:

This is to certify that Herbert Warncke is under my medical care and is unable to work indefinitely due to arthritic condition in his shoulders.

*Id.* at 198. The letter neither contained nor referred to other information or findings in support of its conclusion. The ALJ entered both the telephone message and the letter into the record, but he did not ask Leavitt or Wells whether this newly presented evidence changed their opinions.

On September 8, 1976, the ALJ issued his decision finding that Warncke's impairments did not render him disabled. In particular, the ALJ stated that

Claimant's impairments, singly or in combination, have been of such limited severity that taking into account claimant's age, education, work history and general background claimant can no longer drive a truck but can do such light or sedentary work as dispatcher for a trucking company. Also, he retains the ability to work as a contact lens polisher, electronic equipment assembler, cashier for self-service gas station and telephone sales work.

*Id.* at 17. The ALJ's decision was affirmed by the appeals council in May 1977. In July

1977 Warncke filed suit in district court. The judge granted the Secretary summary judgment in January 1978, and held that "in this case the Court is of the opinion that there is no doubt that the decision of the Secretary is supported by substantial evidence." Record, Vol. I, at 79. From this ruling Warncke now appeals.

## II. *Substantial Evidence.*

■ In reviewing claims brought under the Social Security Act, we must affirm the Secretary's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980). Substantial evidence requires "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). We may not reweigh the evidence or substitute our own judgment for that of the Secretary even if we find that the evidence preponderates against the Secretary's decision. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).

■ Disability is defined by the Social Security Act as the

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). A person is disabled under the Act

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The burden of proving such a disability is upon the claimant. *Fortenberry v. Harris*, 612 F.2d at 949.

Before Warncke filed Dr. Gol's November 12, 1975 letter, which he delayed to present to the ALJ until two months after the hearing, the record provided ample evidence to support the reviewing physician's opinion and the ALJ's finding that Warncke was not disabled. For example, Warncke himself testified that the percutaneous stimulator eased his pain, and that he was able to walk without problems. Dr. Leavitt testified that percutaneous stimulators were routinely and effectively used to enable patients to manage pain. Warncke's ulnar neuropathy was successfully corrected by surgery. Apart from Dr. Gol's November 1975 letter, the strongest evidence to support Warncke's disability claim was his own testimony that he was too tired to work during the day because the pain kept him awake at night. The record suggests that heat treatment and medication could be used to help Warncke sleep at night. This is not a case in which the ALJ and reviewing physician reached a decision contrary to the uncontroverted medical testimony, or unsupported by other adequate acceptable evidence. *Compare Goodley v. Harris*, 608 F.2d 234, 236–37 (5th Cir. 1979) (reviewing physicians' opinions ignored uncontroverted evidence about claimant's psychological disability); *Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980) (record does not show that reviewing physicians' opinions were based upon adequate acceptable evidence).

■ The evidence supporting the reviewing physician's opinion and the ALJ's finding is undermined somewhat by Dr. Gol's November 12, 1975 statement that Warncke "is unable to work indefinitely due to arthritic condition in his shoulders." We accord little weight to the opinion of a reviewing physician if it is contrary to the opinion of the only physician to examine the patient. *Strickland v. Harris*, 615 F.2d at 1109–10. *See also Martin v. Secretary of HEW*, 492 F.2d 905, 906–10 (4th Cir. 1974); *Landess v. Weinberger*, 490 F.2d 1187, 1189–90 (8th Cir. 1974). Warncke's situa-

tion is distinguishable from cases like *Strickland, Martin,* and *Landess,* however, because Gol's statement about Warncke's disability is not inconsistent with the later opinion by Leavitt, the reviewing physician. Dr. Gol stated that Warncke "is unable to work indefinitely" on November 12, 1975, almost four months before Warncke received his percutaneous stimulator and was released from the hospital. Warncke himself testified that use of the stimulator eased his pain, which Gol's November 1975 letter cites as the sole reason for Warncke's inability to work. Dr. Gol's statement about Warncke's condition before he received the stimulator bears little relevance to Warncke's later ability to work while using the stimulator. Moreover, even apart from its untimeliness, Gol's statement appears so brief and conclusory that it lacks strong persuasive weight. The letter is vaguely addressed "TO WHOM IT MAY CONCERN," and its conclusion about Warncke's inability to work is unsupported by any recitation of medical findings or other relevant factors. The letter does not mention whether Warncke could possibly perform special light or sedentary jobs. In situations like this one, when other evidence in the record supports a conclusion contrary to the opinion of an examining physician, the Secretary's regulations allow the ALJ to reject the opinion of the examining physician. 20 C.F.R. § 404.1526 (1979). We conclude that in this case the Secretary need not be constrained by Gol's untimely and conclusory statement because other substantial evidence in the record supports the decision to deny Warncke disability benefits.

### III. New Regulations.

Warncke contends that we should remand the case for a rehearing under new regulations which became effective February 26, 1979, while this appeal was pending. In *Hicks v. Califano,* 600 F.2d 1048, 1050 (4th Cir. 1979), the Fourth Circuit applied these new regulations retroactively to a case already pending on appeal, under the authority of *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Even if we assume *arguendo* that the regulations should apply to this case, we conclude that a rehearing is unnecessary because the ALJ's findings are consistent with the criteria outlined in the new regulations.

The Secretary adopted the new regulations, 20 C.F.R. §§ 404.1502 to 1513 and Subpart P, App. 2 (1979),

> to consolidate and elaborate upon long standing medical-vocational evaluation policies for adjudicating disability claims in which an individual's age, education, and work experience must be considered in addition to the medical condition.

43 Fed.Reg. 55,349 (1978). These new regulations discuss the criteria to be considered in determining whether a disability exists, 20 C.F.R. §§ 404.1505 to 1511, and direct a finding of disability or no disability when the findings of fact in a case coincide with the criteria outlined in the charts under Subpart P, App. 2. Given Warncke's age, limited education, and medical condition, the criteria in the relevant chart would allow a finding of no disability only if Warncke's previous work was skilled or semiskilled, and the skills required by that work are transferable to other available jobs. Warncke's previous work as a self-employed trucker and as a manager of his own trucking operation was at least semiskilled in nature, and required skills that are sufficiently transferable to available jobs such as truck company dispatcher, self-service gas station cashier, and telephone salesman. Because the ALJ expressly considered Warncke's age, education, work history, and general background in finding that he could perform these available jobs, the ALJ's decision is consistent with the relevant criteria in the new regulations.

Because the Secretary's decision is supported by substantial evidence and is consistent with the new regulations, we affirm the order in the court below.

AFFIRMED.