Samuel I. SMITH, SSN: 446–34–0638, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

No. 5:92–CV–0006–C.

United States District Court,
N.D. Texas,
Lubbock Division.

July 13, 1992.

Bradford L. Moore, Brownfield, Tex., Gregory W. Peterson, Des Moines, Iowa, for plaintiff.

Marvin Collins, U.S. Atty., and Rebecca Gregory, Asst. U.S. Atty., N.D. Tex., for defendant.

### ORDER REMANDING TO SECRETARY OF HEALTH AND HUMAN SERVICES

CUMMINGS, District Judge.

The Plaintiff, Samuel I. Smith, brought this action under the Social Security Act for a review of a final decision of the Secretary of Health and Human Services, 42 U.S.C. § 405(g). The Secretary had denied the Plaintiff's claim for disability insurance benefits. The U.S. Magistrate Judge entered Findings, Conclusions and Recommendation. No Objections have been filed to the Findings, Conclusions and Recommendation by the Plaintiff. The Secretary forwarded a letter to the United States District Judge stating no Objections would be filed. A copy of this letter is attached to this Order. The Court has made an independent examination of the records.

It is, Ordered the findings of fact, conclusions of law and recommendations of the U.S. Magistrate Judge are hereby adopted.

It is, further Ordered there is not substantial evidence to support the decision of the Secretary.

It is, further Ordered this Social Security claim is remanded to the Secretary for determination at the Fifth Sequential Step of the decision making process, and the Secretary's decision is confined to determining whether or not the Plaintiff possess "highly marketable" and transferrable skills under 20 C.F.R. § 404.1563(d).

It is, further found and Ordered the jurisdiction of this Court should be terminat-

ed, *Sullivan v. Finkelstein*, 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990) and *Frizzell v. Sullivan*, 937 F.2d 254 (5th Cir. 1991), since this case is not being remanded for the taking of new evidence under authority of *Kane v. Heckler*, 731 F.2d 1216 (5th Cir.1984).

LET JUDGMENT BE ENTERED ACCORDINGLY.

### FINDINGS, CONCLUSIONS AND RECOMMENDATION

WARNICK, United States Magistrate Judge.

The Plaintiff, Samuel I. Smith, appeals a final decision of the Secretary of Health and Human Services, 42 U.S.C. § 405(g). Plaintiff made an application for disability insurance benefits.

Plaintiff had a Hearing before an Administrative Law Judge (ALJ) on October 31, 1990. The ALJ rendered his decision on December 21, 1990. The ALJ found "no disability" at the Fifth Sequential Step of the decision making process. The Appeals Council on November 8, 1991, affirmed the decision of the ALJ. Thus, the ALJ's decision became the final decision of the Secretary.

Plaintiff originally claimed an onset date of his disability as December 15, 1987. The ALJ also found as claimed this was the date. There seems to have been a misunderstanding as to what date he was to claim because the Plaintiff attempted to change it from December to June 15, 1987 (TR–82). However, the ALJ found December 15, 1987.

Plaintiff was born on April 22, 1926. He has a Bachelor of Science degree in agronomy from Texas Tech University. Plaintiff went to work for Cargill, Inc., in their seed sales department, and remained with them until he recently retired. Plaintiff at the end of his service was a territorial manager in charge of a large geographic area in Western Texas and Eastern New Mexico.

Plaintiff claims several ongoing problems with regard to disability. He has stress headaches, irregular heart beat, hy-

pertension, hiatal hernia, esophageal spasm, diverticulitis, lower colon cancer, breathing problems, gall bladder problems, continuing sinus problems, and depression as a result of the pressures of his job. However, as will be discussed later the basic disability the Plaintiff faced was of mental depression as a result of the stress of his job. The stress of this job brought on his irregular heart beat, his headaches, and perhaps several of his other problems.

The purpose of the Plaintiff's claim is to establish a disability under the Social Security Act, 42 U.S.C. § 405(g).

■ Pursuant to the Statutory provisions, the Secretary has promulgated regulations which establish a five-step sequential process for determining the presence or absence of disability to award or to deny disability payments, 20 C.F.R. § 404.1520 (1984). All of the various regulatory definitions, etc., appear in 20 C.F.R. § 404.1501 et seq., Subpart P. The Plaintiff bears the burden of proving the first four sequential steps in the test for disability. Then on the final step, if it is reached, the Secretary bears the burden of proof.

## FIRST STEP

The first step is the Plaintiff at the time of the claim of disability and thereafter must not be engaged in substantial gainful activity. If Plaintiff is engaged in substantial gainful activity then the Plaintiff is not disabled, 20 C.F.R. §§ 404.1520(b), 404.1510 and 404.1572.

## SECOND STEP

If the ALJ decides Plaintiff is not engaged in substantial gainful activity, the second determination is to find if there is an (1) impairment and (2) whether it's severe, 42 U.S.C. § 423(d)(2)(A). The Plaintiff must have an impairment which is severe to be found disabled, 20 C.F.R. §§ 404.1520(c), 404.1508, 404.1513, 404.1520–.1530, *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and *Sewell v. Heckler*, 764 F.2d 291 (5th Cir.1985). If it is a severe impairment the process moves to the next step.

## THIRD STEP

■ The Secretary has published certain tables and grids for determining a per se disability, Part 404, Appendix 1, Subpart P, and 20 C.F.R. § 404.1525. These grids can establish disability, but they are not determinative of "no disability." Their basis is some impairments are per se disabling without considering age, education or work experience, *Perez v. Schweiker*, 653 F.2d 997 (5th Cir.1981). If the grid or table indicates the Plaintiff is disabled, then the inquiry ends and the Plaintiff is entitled to benefits. *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1953–54, 76 L.Ed.2d 66 (1983). However, if the grid or table does not show a per se disability such a finding does not result in a final conclusion of no disability, 20 C.F.R. § 404.-1520(d).

## FOURTH STEP

The fourth step is to decide whether the present severe impairment prevents the performance of Plaintiff's past relevant work. If the Plaintiff is capable of doing his/her past relevant work there is no disability, 20 C.F.R. § 404.1520(e), *Crouchet v. Sullivan*, 885 F.2d 202 (5th Cir.1989), and *Reyes v. Sullivan*, 915 F.2d 151 (5th Cir. 1990).

(Under the above four steps the burden of proof is on the Plaintiff, who is making a claim for benefits, *Lewis v. Weinberger*, 515 F.2d 584, 586 (5th Cir.1975). If through step 4 the findings are Plaintiff (1) is not engaged in substantial gainful employment, (2) has a severe impairment, (3) does not have a per se disability based on the listing of impairments, and (4) is not capable of performing past relevant work, then Plaintiff has established a prima facie disability, *Ferguson v. Schweiker*, 641 F.2d 243, 246 (5th Cir.1981). The decision process then moves to the fifth and final Sequential Step).

## FIFTH STEP

On this final step the burden of proof is on the Secretary, *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984). The initial

determination to be made at this step is if the severe impairment prevents the Plaintiff from performing any work, even sedentary. This step incorporates consideration of the residual functional capacity, the age, education and past work experience of the Plaintiff, 20 C.F.R. §§ 404.1520(f), 404.-1545-.1568. If the Plaintiff is capable of performing at least sedentary work, then at this juncture the decision must also be made as to whether the severe impairments are exertional, non-exertional or a combination of both. If the impairments are solely exertional then the appropriate tables (Medical–Vocational Guidelines) are utilized, 20 C.F.R. Part 404, Subpart P, App. 2, *Heckler v. Campbell*, supra, 461 U.S. at Pgs. 467 and 470, 103 S.Ct. at Pgs. 1957 and 1959. If it is determined the Plaintiff is limited to sedentary work, the ALJ is required to refer to Table No. 1, Appendix 2, Subpart P, 20 C.F.R. § 404.1569 to determine if under his residual functional capacity with his severe medically determinable impairments, he is disabled. If the determination is the Plaintiff can perform light work the ALJ refers to Table No. 2, supra. Table No. 3, supra, is utilized for medium work. However, if the Plaintiff suffers from non-exertional or a combination of exertional and non-exertional impairments the Secretary may not utilize the Medical–Vocational Guidelines. The Secretary may then sustain his burden of proof by producing expert vocational testimony concerning the existence and availability of jobs in the national economy the Plaintiff can perform, 20 C.F.R. Part 404, Subpart P, App. 2, Sec. 200.00(e)(1) and (2), *Harrell v. Bowen*, 862 F.2d 471 (5th Cir.1988), *Fields v. Bowen*, 805 F.2d 1168 (5th Cir.1986), and *Martin v. Heckler*, 748 F.2d 1027 (5th Cir.1984).

The five-step sequential test has been discussed and judicially approved many times, *Martin v. Heckler*, 754 F.2d 1262 (5th Cir.1985).

## SUBSTANTIAL EVIDENCE

The standard by which the decision of the ALJ is reviewed is known as the doctrine of "substantial evidence". If the ALJ's findings are supported by substantial evidence then the decision will be affirmed. Substantial evidence was defined by the United States Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) as,

"... more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

█ A substantial evidence test does not involve a simple search of the record for isolated bits of evidence which support the decision of the Secretary/Defendant. The Court is required to consider the record as a whole, *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985), and *Singletary v. Bowen*, 798 F.2d 818 (5th Cir.1986).

On the converse to find there is "no substantial evidence" to justify reversal of the ALJ's decision, it must be concluded there is a "conspicuous absence of credible choices", *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir.1983).

Four (4) doctors made examination of Plaintiff's medical records on behalf of the Secretary. Dr. J. Syjagintsey, Dr. Paul Getts, Dr. S.W. Casner, and Dr. Frank B. Higgins respectively on March 23, 1988, July 6, 1989, November 10, 1989, and April 17, 1990, each arrived at the decision of no disability based solely upon a records examination.

Plaintiff has lived in Brownfield, Texas, for over thirty (30) years. His family and long time treating physician since 1971 or 1972, has been Dr. Carl R. Smith. Plaintiff has at the request of Dr. Smith seen a series of doctors over the years.

Dr. Smith on April 28, 1986, after a hospital admission (TR-161) found Plaintiff suffered from asthma, emphysema and hypertension with early hypertensive cardiovascular disease. Plaintiff had been admitted to the hospital with diarrhea of undetermined etiology and pneumonia.

In November, 1988, Plaintiff was diagnosed by Dr. H.L. Willis as having hemorrhoids, hypertension and peripheral arteriosclerosis (TR-226). Then in February, 1989, Plaintiff was again seen by Dr. Carl

Smith with a problem of pneumonia. He was found at this time to again have hypertensive cardiovascular disease, and a recurrent atrial fibrillation.

On October 25, 1989, Dr. Carl Smith wrote a letter to the Texas Rehabilitation Commission on behalf of the Plaintiff. He listed the Plaintiff as having stomach and colon problems. Those were a hiatal hernia, atrial gastritis, and cardiospasm of the esophagus. He found the Plaintiff also had hypertension but it had been treated successfully with drugs. He noted also Plaintiff had been hospitalized in another city with an acute atrial fibrillation. Dr. Smith noted he had a right carotid arterial surgery in March, 1989. He had a stenosis greater than 95% and an endarterectomy was done without difficulty. The Plaintiff in April, 1989, following surgery had an angiogram which showed minimal narrowing in the right coronary artery. Dr. Smith also said he had lung problems which resulted from his long history of smoking. It was noted Plaintiff had intermittent asthma and uses an inhaler, and he does have a persistent shortness of breath along with wheezing or asthma. Dr. Smith said he had a long standing history of chronic depressive reaction with underlying anxiety, and it caused moderate muscle contraction headaches which had to be treated symptomatically. Plaintiff also had a cataract removed from his left eye and has a problem with chronic dry eyes. Dr. Smith, after making a full review of his problems, and finding as a final diagnosis of hypertension, atrial fibrillation, chronic reflux esophagitis, chronic obstructive pulmonary disease with bronchia pulmonary infections, history of cancerous polyps of the colon, and a chronic anxiety and depressive reaction, opined he would not be able to reenter the job market. Dr. Smith on November 27, 1989, wrote another letter and confirmed his opinion.

The Plaintiff was seen by Dr. Alex K. Munson, a practicing psychiatrist. Dr. Munson found his job prior to retirement had led to exacerbations of his depressed state which rendered him dysfunctional. Dr. Munson noted those had been resolved during an absence of stress only to reoccur during two (2) periods of identified stress. Dr. Munson opined he could not return to work without resulting in additional stress due to personality factors. The doctor felt in all probability returning to work would result in further exacerbations of a depressive nature. Dr. Munson said he had chronic depression (TR–288).

Plaintiff testified at his Hearing to basically all of the same depression problems. Plaintiff testified with regard to his several medical problems that the medications he takes, including those for his depression, seem to keep things under pretty good control (TR–50). Plaintiff stated he had no physical problems (TR–62).

The Secretary called a vocational expert, Vernon Smothers. Smothers testified Plaintiff had during his several years of working for the seed company acquired certain skills. He denominated those skills as coordinating, negotiating, handling and supervision. These are denominated as skills in the Dictionary of Occupational Titles, Fourth Edition (1977) at Page 1369. The skills in the Appendix at Page 1369 are divided into data, people and things. Coordinating has to do with data. It is defined as determining time, place, and sequence of operations or actions to be taken on the basis of analysis of data and executing determination and/or reporting on events. Negotiating and supervising are people skills. Negotiating is the exchanges of ideas, information and opinions of others to formulate policies and program and/or arrive jointly at decisions, conclusions or solutions. Supervising is determining or interpreting work procedures for a group of workers, assigning specific duties to them, maintaining harmonious relations among them, and promoting efficiency. A variety of responsibilities may be included in supervision. Handling is under the things category and it means using your own body members, hand tools and/or special devices to work, move, or carry objects or materials. Handling involves little or no latitude for judgment with regard to obtainment of standards or in selecting the appropriate tool, object or materials. Handling is mentioned by the vocational expert which

seemed to be not an acquired skill of this Plaintiff who worked with mental skills throughout his job with Cargill. The vocational expert said considering the limitations and Plaintiff's being unable to do his past relevant work, there were skilled sedentary and semi-skilled sedentary jobs in the national economy to which he could transfer his skills and perform. The vocational expert made specific reference to the Dictionary of Occupational Titles.

## MEDICAL CREDIBILITY

 Unless there is some specific reason as enunciated by the ALJ in his Findings for giving little or no weight to the medical opinions of a treating physician as opposed to the conclusions of a one time examining physician and more particularly the diagnosis of a physician who has simply reviewed records, the opinions of the treating physician are to be given considerable weight, *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir.1980), *Smith v. Schweiker*, 646 F.2d 1075, 1088 (5th Cir.1981) and *Milam v. Bowen*, 782 F.2d 1284 (5th Cir.1986).

It has been specifically noted where the doctor's consultation and treatment has been over a lengthy period of time his opinion should be accorded considerable weight, *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir.1980), reh den., 624 F.2d 1098 (5th Cir.1980) and *Perez v. Schweiker*, 653 F.2d 997 (5th Cir.1981). As was said in *Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir.1977),

"Once it is determined that an impairment exists, the opinions of the treating physician are entitled to substantially greater weight than the impressions of a doctor who sees the claimant only once."

 The ALJ did in effect analyze the findings of Dr. Smith. The ALJ found he had stated no physical pathology which interfered with the Plaintiff's ability to be able to function at his previous job. As mentioned before, the only barrier to his being able to work was the depression and stress he suffered as a result of his job. Therefore, there wasn't any finding of Dr. Smith except the depression diagnoses considered because Plaintiff by his own testimony suffers no physical disability unrelated to his stress.

The attorney representing the Plaintiff at the Hearing was candid and straightforward, and said at his suggestion Plaintiff had gone to see the psychiatrist Dr. Alex K. Munson. It was not clear whether he specifically selected Dr. Munson or simply sent his client to a psychiatrist. In reference to Dr. Munson the ALJ made a most unfortunate comment, which led him to an unsubstantiated and unfounded opinion. The ALJ stated,

"It seems clear the examination was performed for the specific purpose of obtaining disability benefits." (TR–17).

Such an unsupported indictment implies there was some sort of collusion between the attorney and psychiatrist for a report to be written finding disability. There is absolutely *nothing* in this record which would impute or discredit the professional credibility of Dr. Munson as a practicing psychiatrist. The record is devoid of any such testimony. There is nothing to show Dr. Munson performed his examination with the predetermined object of gaining Social Security benefits for this Plaintiff. Ironically, after his groundless opinion, the ALJ did analyze and utilize Dr. Munson's report. The ALJ agreed because of the stress and potential exacerbation of his depression Plaintiff could not return to his past relevant work. The ALJ held based upon the testimony of the vocational expert, Plaintiff had transferrable skills, and could perform sedentary work.

Skill requirements and specifically transferability of skills is found at 20 C.F.R. § 404.1568(d). However, with regard to transferability of skills it is also controlled by 20 C.F.R. § 404.1563(d). This section of the Regulations relates to persons of advanced age and has a particular reference to people whose ages are inclusively between 60 through 64. The Regulation says if you are severely impaired, of advanced age, and cannot do medium work, you may not be able to work unless you have skills which can be used or transferred to less demanding jobs which exist in significant numbers in the national economy. Howev-

er, a very limiting phrase in this Regulation is vital. 20 C.F.R. § 404.1563(d) says,

"If you are close to retirement age (60–64) and have a severe impairment, we will not consider you able to adjust to sedentary or light work unless you have skills which are *highly marketable.*" (Emphasis Added)

This Plaintiff falls squarely within the category of a person of advanced age who is close to retirement because he was between 60–64 on the date of his claimed disability in 1987. Whether the beginning date of disability was June or December, Plaintiff was already 61 years of age. He did have a severe impairment. However, he could only be found to have transferrable skills if those skills were "highly marketable". The vocational expert was never asked if Plaintiffs transferrable skills were highly marketable. In fact, the ALJ makes no mention of "highly marketable". The ALJ simply said in his finding number 11 considering the Plaintiff's *AGE*, education and work experience, he could be expected to make the vocational adjustment. (Emphasis Added). The ALJ only made this conclusory statement about age. As already noted, the ALJ in his opinion never even used the term "highly marketable", and did not discuss its application to Plaintiff's circumstances.

The use of this standard of highly marketable has never been decided in this Circuit. Therefore, it is essential to turn and see what other Circuits have done in this regard. In *Tom v. Heckler*, 779 F.2d 1250, 1256 (7th Cir.1985) the Seventh Circuit found under 20 C.F.R. § 404.1563(d) the language was unmistakably clear. The Seventh Circuit held unless there was a finding the acquired and transferrable skills were also "highly marketable" the Regulations themselves did not permit a finding of transferability. It was also said in *Tom v. Heckler*, id. at Page. 1257, "here, the record discloses that the ALJ gave no consideration to the issue of 'highly marketable' skills. The words 'highly marketable' are not used, nor is the relevant Regulation cited." In the case at bar, as already noted, the term "highly marketable" were never even mentioned in the ALJ's

opinion. He did cite 20 C.F.R. § 404.1563, but not Subsection (d) specifically. It was not cited for the question of highly marketable, it was cited in his finding number 7 only with regard to Plaintiff being close to retirement age (TR–18). In *Emory v. Sullivan*, 936 F.2d 1092, 1095 (10th Cir.1991) the Secretary again did not specifically discuss the marketability of a claimant's skills or cite the relevant legal standards. The Tenth Circuit said it is not sufficient unless the correct legal standards are cited and the claimant's skills are found to be highly marketable. In *Emory v. Sullivan*, id. at Page 1095, the Tenth Circuit stated, "claimant is now 66 years old, and it has been 4 years since he applied for benefits. The Secretary has not shown any good reason why he failed to consider whether claimant's skills are highly marketable even though his own regulations require him to do so." In *Renner v. Heckler*, 786 F.2d 1421 (9th Cir.1986) the same consideration was being made. The Ninth Circuit found this marketability meant something more than mere transferability was the requirement as evidenced by the structure of the Regulations. The Ninth Circuit found *Tom v. Heckler* was instructive and followed its reasoning. In *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 781–82 (6th Cir.1987), the Sixth Circuit said,

"in our view, the regulations sets forth a straightforward command that before it can be determined that a claimant over sixty years of age, who acquired skills while performing medium work, is able to transfer those skills to sedentary work, it must first be shown that the skills are highly marketable. The proposition is intuitively reasonable, in that it reflects the reality that older persons, who do not possess highly marketable skills, will find it difficult to obtain *any* employment. Accordingly, this case must be remanded for a finding as to whether plaintiff's skills ... are highly marketable."

The Secretary has wholly failed in his responsibility to decide this case on the basis

of the allegedly transferrable skills being "highly marketable".

I, therefore, recommend it be found there is not substantial evidence to support the Secretary's finding.

I, recommend this Social Security claim be remanded to the Secretary for a determination at the Fifth Sequential Step of the decision making process with regard only to a finding concerning whether or not Plaintiff possesses "highly marketable" and transferrable skills.

I, further recommend an Order be entered finding the jurisdiction of this Court is terminated, *Sullivan v. Finkelstein*, 496 U.S. 617, 110 S.Ct. 2658, 2664–66, 110 L.Ed.2d 563 (1990) and *Frizzell v. Sullivan*, 937 F.2d 254 (5th Cir.1991), since this case is not being remanded for the taking of new evidence under authority of *Kane v. Heckler*, 731 F.2d 1216 (5th Cir.1984).

The Clerk is directed to file the Findings, Conclusions and Recommendation and to send a copy of it to the Plaintiff and a copy to each attorney of record. Any party may object to the proposed Findings, Conclusions and Recommendation within ten (10) days after having been served with a copy hereof, Rule 72, Federal Rules of Civil Procedure, and Rule 4(a)(1) of Miscellaneous Order No. 6 as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas. Such party shall file with the Clerk of the Court, serve on the Magistrate Judge and on all parties, written objections, which shall specifically identify the portions of the Findings, Conclusions and Recommendation to which objection is made and shall set out fully the basis for each such objection. Objections are required to obtain a de novo review by a United States District Judge. Failure to timely file written objections to the proposed Findings, Conclusions and Recommendation contained in this report shall bar an aggrieved party from attacking the factual findings on appeal. See *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985)

and *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir.1982) (en banc).