Michael L. YOUNG, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CIV.A. 01–G–3099–NE.

United States District Court,
N.D. Alabama,
Northeastern Division.

Dec. 10, 2002.

Darryl W. Hunt, Clark & James LLC, Birmingham, AL, for Michael L. Young, Plaintiff.

Alice H. Martin, U.S. Attorney, Winfield J. Sinclair, U.S. Attorney's Office, Birmingham, AL, Mary Ann Sloan, Jerome M. Albanese, Social Security Administration–Office of General Counsel, Atlanta, GA, for Jo Anne B. Barnhart, Commissioner of Social Security Administration, Defendant.

### MEMORANDUM OPINION

GUIN, District Judge.

Having been a practicing attorney and United States District Judge for a combined period of over 50 years this court is

well aware of his oath taken to uphold the law. Never during any period of that time has this court exceeded its scope of review. Review of Social Security cases falls within the "scope of review" this court possesses and is part of the checks and balances of our system of justice. Preserving the rights of disability claimants falls within the "scope of review" of this court. Preserving the laws established by which disability claims are measured falls within the "scope of review" of this court. Protecting the United States government from overreaching claimants falls within the "scope of review" of this court. Examining the evidence falls within the "scope of review" of this court. Determining whether all evidence was considered and whether proper weight was afforded it falls within "scope of review" of this court. Determining whether the decision reached by a lower court was a proper one falls within "scope of review" of this court. Determining whether the ALJ developed a full and fair record falls within the "scope of review" of this court. Determining whether the ALJ carefully weighed all of the evidence and gave individualized consideration to each claim falls within "scope of review" of this court.

Social Security claimants have the right to appeal their cases to the district court. "There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid.... Instead we conduct 'an exacting examination' of these factors." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir.1996). It is, therefore, within this court's "scope of review" to determine that appropriate legal standards were followed. The Fifth Circuit correctly stated the role of the district court in another way when it said the following:

> The narrowly circumscribed ambit of judicial review does not, however, excuse the court from a responsibility to scrutinize the record in its entirety to determine whether substantial evidence supports each essential administrative finding, *Simmons v. Harris,* 602 F.2d 1233 (5th Cir.1979).

*Strickland v. Harris,* 615 F.2d 1103, 1106 (5th Cir.1980).[1]

Consistent with the guidelines set by our legal system claimants and defendant have the right to appeal this court's decision to the Eleventh Circuit Court of Appeals. Plaintiff appealed the Commissioner's decision to this court. Upon review the court rightly reversed the decision. At this juncture either party may appeal this court's decision to a higher court. Rather than taking offense at the spurious accusations cast by the government the court will methodically once again reason why the Commissioner's decision was reversed.

The court agrees with defendant that the decision concerning the disability status of a disability claimant is one that, as a matter of law, is based on substantial evidence. It is not necessary for the defendant to remind the court that substantial evidence is "more than a scintilla" or to remind the court that substantial evidence is evidence that a "reasonable mind" might accept as adequate to support a conclusion. As a "reasonable mind" the court decided that the record contains substantial evidence to reverse the Commissioner's decision. As a "reasonable mind" the court correctly decided that the record does not

---

1. *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1207 (11th Cir.1981) (Held that decisions of "old Fifth" "as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent on the Eleventh Circuit.")

contain substantial evidence warranting denial of benefits to the claimant.

The court disagrees with defendant that it "conducted its own evaluation of the evidence." Rather than evaluating, deciding the facts anew, reweighing the evidence, or substituting its judgment for that of the Commissioner, in accordance with the decision of *Miles v. Chater,* 84 F.3d at 1400, the court conducted "an exacting examination" of the whole record [2] to determine if the Commissioner's decision was supported by substantial evidence. In conducting such an examination the court is bound by the record.

█ The instant case is what is known as a pain case. It was decided on the basis of the pain standard set by the Eleventh Circuit in *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991). Until such time as the Circuit changes the standard set, whether it agrees with the standard or not, this court shall abide by that standard. Whenever a claimant asserts disability through testimony of pain or other subjective symptoms, the Eleventh Circuit standard requires:

1. evidence of an underlying medical condition and either

2. objective medical evidence confirming the severity of the alleged pain arising from that condition or

3. that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain.

*Holt,* 921 F.2d at 1223. See also *Elam v. Railroad Retirement Board,* 921 F.2d 1210, 1215 (11th Cir.1991); *Lamb v. Bowen,* 847 F.2d 698, 702 (11th Cir.1988); *Hand v. Heckler,* 761 F.2d 1545, 1548 (11th Cir.1985).

In *Brown v. Sullivan,* 921 F.2d 1233 (11th Cir.1991), the court said:

The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986); *Landry v. Heckler,* 782 F.2d 1551, 1552 (11th Cir. 1986). If the Secretary decides not to credit such testimony, he must discredit it explicitly, *MacGregor* at 1054, and articulate explicit and adequate reasons for doing so. *Hale,* 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen,* 858 F.2d 1541, 1545 (11th Cir.1988); *Hale,* at 1011; *MacGregor,* at 1054.

*Brown v. Sullivan,* 921 F.2d at 1236.

█ In search for substantial evidence the court is guided by consideration of four factors, set forth below:

1) Objective medical facts or clinical findings;

2) Diagnoses of examining physicians;

3) Subjective evidence of pain and disability as testified to by the claimant and other witnesses, including family members; and

4) The claimant's age, education, and work history.

*Smith v. Schweiker,* 646 F.2d 1075, 1076 (5th Cir.1981); *Johnson v. Harris,* 612 F.2d 993, 997 (5th Cir.1980); *Strickland v. Harris,* 615 F.2d 1103, 1106 (5th Cir.1980); *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972). Following the factors to be considered in a search for substantial evidence, the court in *Smith v. Schweiker,*

---

**2.** *Strickland v. Harris, supra.*

646 F.2d at 1076 dissected the facts as the evidence presented, a procedure this court will follow.

## DISSECTING THE FACTS— THE EVIDENCE

### A. Age, Education, Work Experience

Plaintiff is a 30 year old male who has completed twelve years of school. Although he has completed twelve years of school he has not earned either a high school diploma or a GED. His past relevant work is as a furniture sander, a gutter installer, an oil changer, and a gas station attendant.

### B. Objective Medical Facts and Clinical Findings

■ Medical evidence establishes that claimant has serious medical problems stemming from an automobile accident in 1996: closed head injury; displaced left radius fracture; right clavicle fracture; multiple fractures of left foot; displaced right tib fib fracture.[3] Plaintiff's testimony verified by the medical records shows he sustained broken collar bones on both sides of his body. Both legs were broken. Both feet were broken. His left foot was crushed. Steel rods and pins were surgically inserted into his left arm, knees, legs, and ankles. He sustained a head injury and was in a coma two-three days following the accident. Upon release from the hospital he spent six months in a wheel chair. He was left with a noticeable limp.

The ALJ found that plaintiff has "residuals from fractures of both clavicles, the right tibia/fibula, left radius, and left foot." Upon a July 24, 1997, examination[4] government consultative physician Glen D. Sockwell found degenerative, traumatic osteoarthritis in the ankles, knee, and left shoulder, with old fracture wounds involving both clavicles. Dr. Sockwell's physical examination included examination of the head and neck, a chest exam, an abdominal exam, examination of the extremities, examination of the back, a locomotor exam, a neurological/motor exam, a sensory exam, and examination of the reflexes. His examination revealed deformities of both clavicles. Examination of the extremities revealed "fairly well healed" scars. The doctor noted pain in left arm and ankle joints. Plaintiff had mild to moderate spasms in his back. Plaintiffs walked slowly. He was able to squat slowly by putting his hands on the floor to stop the ankle pain. Heel/toe walk was clumsy. Plaintiff was unable to stand on his toes and heels. Plaintiff had decreased muscle strength in both hands, more so in the left hand than the right. On a scale of 0–4 plaintiff's reflexes were about two.

On behalf of plaintiff orthopaedic surgeon Dr. Lloyd Johnson, Jr.[5, 6] performed

---

**3.** Admission and discharge diagnoses from Eliza Coffee Memorial Hospital, status post motor vehicle accident.

**4.** Although the government ordered a physical examination it did not order any laboratory data.

**5.** Dr. Johnson's notes include the following: "This patient is not able to obtain any medication at the present time. He does not have a doctor that sees or treats him on a regular basis. I saw him for examination only." Plaintiff testified he has no insurance and no money to spend for visits to physicians or to purchase medication. Because of lack of funds he has been without medical treatment and without pain medication. The ALJ sloughs this off by noting that plaintiff had money to buy cigarettes. In discussing this poverty/lack of funds issue our circuit has had the following to say:

> We agree with every circuit that has considered the issue that poverty excuses noncompliance. *See, e.g., Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir.1987) ("To a poor person, a medicine that he cannot afford to buy does not exist"); *Lovejoy v. Heckler,* 790 F.2d 1114, 1117 (4th Cir.1986) (failure to

a physical examination on May 27, 1998, fifteen months after the last time Dr. John Young saw plaintiff.[7] Dr. Johnson's examination showed the following:

1) Clavicle fracture in middle third of right clavicle with bony overgrowth;

2) Decreased ROM of right shoulder (abduct to 90 degrees—forward elevation 95 degrees—backward elevation 25 degrees);

3) Surgical incisions on left arm indicative of open reduction;

4) Weakness grip strength of left hand (2 on scale of 5) (plaintiff's dominant hand);

5) Tenderness to palpation throughout pretibial area;

6) Decreased ROM of left foot (dorsiflex to 20 degrees—plantar flex to 30 degrees—inversion 2 degrees—0 eversion left ankle);

7) Inability to stand or walk on heels/toes;

8) Inability to squat and rise without assistance;

9) Obvious limp;

10) Circumferential measurements of arms 7 inches distal to acromion reveal left arm to be 1/4 inch smaller than right;

11) X-rays of right tibia—healed fracture with internal fixation devices in place;

12) X-ray of right clavicle—fracture healed with displacement;

13) X-rays of left foot—showed what appeared to be multiple fractures in the mid foot area, especially involving the tarsal bones.

Dr. Johnson completed a "Physical Capacities Evaluation" on plaintiff. His evaluation is the only such evaluation in the record and is thus unrefuted. He opined plaintiff can lift 10 pounds occasionally or less frequently. During an eight-hour work day he can sit two hours and stand/walk one hour. He placed restrictions on plaintiff's pushing/pulling movements (arm and/or leg controls), climbing, gross manipulation (grasping, twisting, and handling), fine manipulation, and reaching. On the "Clinical Assessment of Pain" form he opined that plaintiff's pain "is present to such an extent as to be distracting to adequate performance of daily activities or work." Physical activity will greatly increase the pain "to such an extent as to cause distraction from tasks or total abandonment of tasks." The doctor stated that plaintiff has underlying medical conditions consistent with the pain he experiences.

follow prescribed treatment does not preclude reaching the conclusion that a claimant is disabled when the failure is justified by lack of funds); *Dover v. Bowen,* 784 F.2d 335, 337 (8th Cir.1986) ("the ALJ must consider a claimant's allegation that he has not sought treatment or used medications because of lack of finances"); *Teter v. Heckler,* 775 F.2d 1104, 1107 (10th Cir.1985) (inability to afford surgery does not constitute an unjustified refusal and does not preclude recovery of disability benefits). Thus while a remedial or controllable medical condition is generally not disabling, when a "claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986) (footnote omitted).
*Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir.1988).

**6.** The ALJ withheld his decision pending the results of the opinion of Dr. Johnson.

**7.** Several other physicians attended plaintiff while he was in the hospital and while he was recuperating from the accident, including an ophthalmologist and a neurosurgeon, as shown by the records from Eliza Coffee Memorial Hospital. Plaintiff was admitted by Dr. Gary Hester and followed up by Drs. Hester and Adderholt (neurosurgeon).

Dr. Johnson's pain assessment, the only one in the record, is unrefuted and stands as a matter of law.

Six months following plaintiff's surgery and admission to the hospital following the vehicle accident Dr. Young examined plaintiff on February 13, 1997.[8, 9]  At that time he evaluated the x-rays and noted he was "pleased with the radiographic appearance at all of his fracture sites." Although he suggested a plan of generalized strengthening and formalized physical therapy plaintiff was financially unable to afford such a program.[10]  Other than the x-ray evaluation and general physical examination nothing indicates he performed a locomotor examination, a neurological/motor examination, a sensory examination, or an examination of plaintiff's reflexes (as did Dr. Sockwell).  Dr. Young's examination predated the examinations of Drs. Sockwell and Johnson.

### C.  Diagnosis

The ALJ has placed significant emphasis on the October 13, 1997, "PLAN" of Dr. Young in which Dr. Young stated the following:

> I have encouraged him today to return to work activities in an unrestricted fashion, *as he is able to tolerate. He will allow symptoms to be his guide* as the [sic] returns to all of these work and recreational activities (emphasis added).

There is nothing in the record to indicate that Dr. Young saw him after February 13, 1997.  Dr. Young did not complete a "Physical Capacities Evaluation" nor a "Pain Evaluation" on claimant.

Dr. Sockwell examined plaintiff on July 24, 1997, at the request of the Administration.  His diagnosis and prognosis follow:

DIAGNOSIS: 1. Degenerative, traumatic osteoarthritis in the ankles, knee, and left shoulder, with old fracture wounds involving both clavicles. 2. Chronic pain in the left arm and shoulder, left lower extremity, and both ankles, due to hardware that is still in the bones.

PROGNOSIS: Guarded.  In summary, this man is only 25 years old, but he has had crushed injury of both feet, with a number of fractures, which were pined [sic] and put together.  He had fractures in both clavicles, fracture of his left lower extremity, and fracture of the left upper extremity and fracture of the right lower extremity.  He still has screws, rods, and plates in all these areas.  This causes chronic pain and he has a lot of weakness.  He can't stand on his toes or heels very well, because of pain.  At this point it will be difficult for him to find employment.

Of the three consulting physicians only Dr. Johnson performed a "Physical Capacities Evaluation" and a "Clinical Assessment of Pain" evaluation.  Dr. Johnson concluded that plaintiff suffers multiple impairments and placed significant restrictions on his ability to function.  He found that plaintiff's pain is present to such an extent "as to be distracting to adequate performance of daily activities or work."

### D.  Subjective Evidence

Plaintiff testified that he lives in constant pain.  Claimant's subjective testimony supported by medical evidence (outlined previously) that satisfies the *Holt*

---

**8.**  The doctor had seen plaintiff intermittently between times.

**9.**  It must be remembered that Dr. Young was the consulting orthopaedic surgeon who performed surgery, but he did not continue to treat plaintiff and did not see him after February 13, 1997.  His own notes indicate that he left follow-up care to other physicians.  Other physicians examined plaintiff later.

**10.**  See n. 5, at 1195.

standard is sufficient to support a finding of disability. *Hale,* 831 F.2d at 1011. According to plaintiff his feet swell. He has difficulty holding things because of weakness and no grip. Because he is left-handed the injuries to his left arm and hand cause significant impairments in his ability to function. He can stand about 15 minutes and is able to walk a short distance. His testimony at the hearing was that he could walk across the street.[11] He has to constantly move around to get comfortable. He still has trouble with his left eye, has dizzy spells and sees spots. He suffers with chronic pain in his right leg, left foot, and collar bones.

Plaintiff's father [12] Gary Lee Young testified at the hearing that prior to the surgery Dr. Young told the family that claimant would always have trouble with his left foot "because it was crushed so bad that they could not fix it." The doctor later told them that there would be swelling of the left foot. The witness went go to say: "And he told us that it never would be well." The foot "was as well as it will ever be . . . instead of being well."

## FINDING AND CONCLUSIONS BY THE ALJ

The ALJ found that the medical evidence "establishes that the claimant has alcohol/substance abuse/dependence in apparent remission and residuals from fractures of both clavicles, the right tibia/fibula, left radius, and left foot" which together constituted "severe" impairments, but that plaintiff was not disabled. He found there was no objective clinical evidence of a con-

dition which could reasonably be expected to produce the level of pain or symptoms which claimant or his father alleged precluding his working. He found that claimant has the residual functional capacity to perform light or less work activity. Any pain would be moderate or less.[13] He would not be able to use foot controls. He should do no crouching, crawling, squatting, kneeling, or climbing. He should do no pushing or pulling with the left upper extremity, with occasional lifting of 20 pounds [14] or less. He should have a sit/stand option at the worksite. Plaintiff's residual functional capacity for the full range of light work is reduced by the limitations set forth above. He concluded plaintiff is not disabled.

## THE COURT'S DIAGNOSIS OF THE RECORD

The court found that any of the residuals from fractures of both clavicles, the right tibia/fibula, left radius, and left foot could reasonably be expected to produce plaintiff's pain. Dr. Sockwell diagnosed degenerative, traumatic osteoarthritis in the ankles, knee, and left shoulder, with old fracture wounds involving both clavicles. He diagnosed chronic pain due to hardware in the bones. Dr. Johnson opined plaintiff has legitimate incapacitating pain. Despite the ALJ's conclusion there was no objective evidence Dr. Johnson found the following

1) decreased ROM of right shoulder

2) decreased ROM left foot

3) weakness grip strength left hand

---

11. The court has no idea of that distance.

12. Subjective evidence of pain may be given by family members. *Smith v. Schweiker,* 646 F.2d at 1076.

13. Dr. Johnson opined plaintiff's pain is present and that any physical activity would in-

crease it to such an extent as to be distracting to his daily activities and work.

14. Dr. Johnson limited plaintiff's lifting ability to 10 pounds occasionally. There is nothing in the record to support the finding that plaintiff is capable of lifting 20 pounds.

4) tenderness pretibial area

5) inability to stand or walk on heels or toes

6) inability squat without assistance

7) residual swelling of left foot

8) reduced circumferential measurement of left arm

9) x-rays of left foot showing multiple fractures in mid foot area, especially tarsal bones

10) marked residual swelling

11) obvious limp.

Other objective evidence is present. Dr. Sockwell found deformities in both clavicles, mild spasms, and a limp. Both Sockwell and Johnson, examining physicians who examined plaintiff months after Dr. Young last saw him, have opined plaintiff has legitimate pain. Their conclusions are based on testing and objective signs and certainly carry more weight than the conclusory statement of Dr. Young that plaintiff is able to return to work activities "as he is able to tolerate." Such an "opinion" is meaningless and certainly not a pain assessment or a Functional Capacity Evaluation, particularly when it is further qualified by the statement that the **plaintiff** (not a physician) "will allow symptoms to be his guide" as to when he is able to return to work and activities. As previously noted Dr. Young completed no "Physical Capacity Evaluation" or "Pain Evaluation" of plaintiff's condition. He performed no neurological/motor testing.

In *Wilson v. Heckler*, 734 F.2d 513 (11th Cir.1984), the court concluded that a treating physician's opinion may be rejected when it is contrary to the evidence. *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th

Cir.1981). The court went on to quote the following language from *Oldham:*

> An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled (or not disabled as in the instant case). It must be supported by clinical or laboratory findings. *Kirkland v. Weinberger, supra,* at 49: *Laffoon v. Califano,* 558 F.2d 253, 256 (5th Cir.1977).

*See also Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir.1983), in which the court accepted the opinion of the consulting physician supported by substantial evidence over that of the treating physician:

> [T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings *Kirkland v. Weinberger,* 480 F.2d 46, 49 (5th Cir.), *cert denied,* 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973). Further, the Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion. *Oldham v. Schweiker,* 660 F.2d at 1084; *Warncke v. Harris,*[15] 619 F.2d 412, 417 (1980).

*Id.*

In *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir.1981), the court was faced with medical opinions of three doctors. The gist of the argument on appeal was that the district court erred in relying upon the report of a non-treating physician and rejecting the determination of a treating physician that claimant was totally disabled. The court said that all things being equal the report of the treating physician should be accepted, but that all things were not equal. The court accepted the

---

**15.** *The Warncke v. Harris* panel affirmed the denial of benefits even though the treating physician had submitted a statement that his patient was unable to work. The court found the treating physician's statement as to disability to be "so brief and conclusory that it lack(ed) strong persuasive weight."

opinion of a reviewing physician that was supported by the evidence in rejecting the conclusory opinion of the treating physician. 660 F.2d at 1084.

The ALJ found that claimant can perform light work or less—a conclusion wholly unsupported in the record. There is no medical evidence in the record that refutes Dr. Johnson's opinion relative to the "Physical Capacities Evaluation" he completed on plaintiff. In *Perez v. Schweiker*, 653 F.2d 997 (5th Cir.1981) the court held that the ALJ's conclusion that claimant could perform light work was wholly without support in the record. The ALJ overstepped his bounds in making medical and vocational decisions without any support in the record. Light work is defined in § 404.1510(c) as the ability to lift 20 pounds maximum with frequent lifting or carrying of objects weighing up to 10 pounds.[16] Jobs in this category can require walking or standing to a significant degree as well as those requiring a good deal of sitting.

A discussion of "DETERMINING CAPABILITY TO DO OTHER WORK—THE MEDICAL–VOCATIONAL RULES OF APPENDIX 2" is found in SSR 83–10. Authority for the material in SSR 83–10 is found in Sections 223(d)(A) and 1614(a)(3)(B) of the Social Security Act; Regulations No. 4, Subpart P, sections 404.1505(a), 404.1520(f)(1), 404.1545, 404.1560–404.1561, 404.1563–404.1569, and Appendix 2; and Regulations No. 16, Subpart 1, sections 416.905(a), 416.920(f)(1), 416.945, 416.960–416.961, and 416.963–416.969. Under the Glossary sedentary work is defined in the following manner:

1) *Sedentary work.* The regulations define sedentary work as involving lifting no more than 10 pound at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

"Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8–hour workday, and sitting should generally total approximately 6 hours of an 8–hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

Distinguish sedentary work from light work.

b. *Light work.* The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require

**16.** Dr. Johnson opined plaintiff can lift 10 pounds occasionally.

greater exertion than in sedentary work.

.     .     .     .     .

*"Frequent"* means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.

SSR 83–10.

Plaintiff is clearly unable to perform light work or less with the restrictions placed on him by the ALJ and by Dr. Johnson. He is unable to perform sedentary work as defined by SSR 83–10. Since there is nothing in the record to refute Dr. Johnson's opinion of plaintiff's physical capabilities to perform work or his inability to do so his opinion stands as a matter of law.

The court reaffirms its decision that plaintiff is disabled as a matter of law—a conclusion supported by substantial evidence.

An order consistent with this opinion is being entered contemporaneously herewith.

### ORDER

This cause comes before the court on the defendant's motion to alter or amend the order entered October 2, 2002. Having considered the motion, the pleadings, the submissions of counsel, and the applicable law, the court is of the opinion the motion should be denied. Accordingly, consistent with the memorandum opinion being entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the defendant's motion to alter or amend the order entered October 2, 2002, be and it hereby is DENIED.